James H. Boomer, J.
In this action for a declaratory judgment and for a permanent injunction, plaintiffs move for a preliminary injunction enjoining the Rochester Gas and Electric Corporation from discontinuing gas and electric service to their premises.
Section 15 of the Transportation Corporations Law provides, in substance, that if any person shall not pay for gas and electric service supplied to him, the utility company may discontinue the service after written notice of five days. Plaintiffs have received such notice, but they contend that section 15 of the Transportation Corporations Law violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that it does not provide them with an opportunity for a hearing before an impartial hearing officer prior to the discontinuance of their utility services.
The pertinent part of the Fourteenth Amendment to the United States Constitution provides that no State shall ‘ ‘ deprive any person of life, liberty, or property without due process of law”. Plaintiffs’ right to ultimate relief in this action depends upon affirmative answers to three questions: (1) Does the discontinuance of gas and electric service under section 15 of the Transportation Corporations Law involve State action?; (2) Does a utility customer háve a property right, within the meaning of the United States Constitution, in the continuance of utility services ?; (3) Does due process require that utility customers, before their services are discontinued, be provided with remedies, not now available to them, such as the opportunity for a hearing before, an impartial hearing officer?
*747 (1) The decisions are not in accord as to whether the discontinuance of service by a utility involves State action. As stated in Palmer v. Columbia Gas Co. of Ohio (342 F. Supp. 241, 244 [N. D. Ohio, W. D.]), “ there are borderlines between governmental and private action, and there can be no question but that the facts set forth put this problem right at the borderline. As usual, there are cases reported which lie on each side of the borderline.” Decisions holding that State action is involved are Palmer v. Columbia Gas Co. of Ohio (supra); Bronson v. Consolidated Edison Co. of N. Y. (350 F. Supp. 443 [S. D. N. Y.]); and Ihrke v. Northern States Power Co. (459 F. 2d 566 [8th Cir.]), where the court, in each case, found State action from the facts that the State gave the utility a monopoly and the right to condemn private property, regulated it, and by statute empowered it to enter upon private property to discontinue the services to customers for nonpayment. These cases concluded that ‘ ‘ When authority derives in part from Government’s thumb on the scales, the exercise of that power becomes closely akin, in some respects, to its exercise by Government itself.” (Palmer v. Columbia Gas Co. of Ohio, p. 245, quoting from Communications Assn. v. Douds, 339 U. S. 382). And “ Where the state has so involved itself with a private concern, the concern can bo said to act for the state.” (Bronson v. Consolidated Edison Co. of N. Y., p. 466.)
Contrary opinions were rendered in Lucas v. Wisconsin Elec. Power Co. (466 F. 2d .638 [7th Cir.]) and Kadlec v. Illinois Bell Tel. Co. (407 F. 2d 624 [7th Cir.]). In Lucas, the court pointed out that even if the State had not granted the utility a monopoly it would be unrealistic to assume that a utility customer in any particular locality would have available to him alternative sources of service; that the State’s regulation of the uitlity does not aid it in discontinuing services; and that the State law permitting discontinuance of service for nonpayment (except where entry is made on private property to do so) it gives no right to the utility that it does not have at common law.
I do not find it necessary to decide this question and I now pass on to the two remaining questions.
(2) Does a utility customer have a property right, within the meaning of the Due Process Clause of the Federal Constitution, in the continuation of utility services?
The concept of property rights within the meaning of the Due Process Clause of the Federal Constitution has been greatly expanded in recent years. The benefits payable to a *748 welfare recipient may not be terminated until the recipient is afforded an opportunity of an impartial hearing (Goldberg v. Kelly, 397 U. S. 254). Implicit in this holding is that a statutory right to welfare benefits is considered to be a “ property ” right within the meaning of the Constitution. In Goldberg (pp. 262, 263), the court held that the termination of welfare benefits “ involves state action that adjudicates important rights * * * The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be ‘ condemned to suffer grievous loss ’ * * # and depends upon whether the recipient’s interest in avoiding that loss outweighs the governmental interest in summary adjudication.” The threat of termination of utility services for nonpayment “ involves none of the special irreversible economic hardships requiring prior judicial proceedings, as does wage garnishment (Sniadach v. Family Finance Corp., 395 U. S. 337) or termination of public assistance payments (Goldberg v. Kelly, 397 U. S. 254).” (Matter of 300 West 154th St. Realty Co. v. Department of Bldgs. of City of N. Y., 26 N Y 2d 538; see, also, Goldenthal v. New York Tel. Co., 68 Misc 2d 749, 752, affd. 40 A D 2d 825.) In the Goldberg case (p. 264), unlike many others involving termination of benefits, the “ crucial factor * * * is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate.” But this is not the situati.on when a utility customer is threatened with discontinuance of utility service for alleged nonpayment of his bill. He may avoid any “ grievous loss ” that might be occasioned, by paying the disputed amount and seeking a refund.
That it may be too costly to bring a court action for a refund for a small amount does not make the loss a “ grievous one ”. “ The fact that a dispute may be so trivial that an injured party may elect to suffer injustice rather than to assert his legal rights — in other words, that the maxim de minimus non curat lex suitably applies — is certainly no reason for construing the Federal Constitution as requiring special procedural safeguards for such matters.” (Lucas v. Wisconsin Elec. Power Co., 466 F. 2d 638, 650, supra). It is indeed unfortunate that anyone is compelled to forego any legal remedy even in a minor matter because of the cost involved, and efforts have been made to alleviate this problem. Legal aid has been provided for the poor and small claims courts have been *749 established so that aggrieved persons may, without an attorney and for only a very modest fee, pursue their legal rights.
Persons on welfare are protected since their utility services may not be terminated for nonpayment of utility bills rendered for services furnished in the four-month period preceding the month of their application for welfare, nor for nonpayment for services rendered while they are on welfare provided the welfare official guarantees payment. (Transportation Corporations Law, §§ 12, 15.) Grants to an applicant for public assistance are authorized to pay for utilities already furnished, for the four-month period immediately preceding the date of application, in order to prevent shutoff or to restore service (18 NYCER 352.7 [g] [4]). For a recipient of public assistance, an advance allowance may be provided to pay for utilities already furnished in order to prevent a shutoff or to restore services, and the welfare authorities may make payments directly to the utility company (18 NYCRR 352.7 [g] [5]).
3. Assuming that the continuation of utility services rises to the status of a property right within the Due Process Clause of the Constitution, what process is due before utilities may be terminated for nonpayment, and has the plaintiff been deprived of that process?
Since the nature of the loss is not as grievous as that in Goldberg, the requirements of due process need not be as extensive. The determination of whether a utility bill has been paid, in my opinion, does not involve such intricate questions of law or fact as to require the establishment of an independent, quasi-judicial, tribunal with its attendant expense to the public or to utility customers. Due process is satisfied if the customer is given noticé before termination and an opportunity to present to the utility company any evidence he may have, if he claims that his bill has been paid.
On the question of what process is due, the cases cited by plaintiffs have not gone as far as the plaintiffs would like us to — to declare that utility services may be discontinued only after the opportunity for a formal hearing before an independent hearing officer. In the Palmer case (342 F. Supp. 241, 243, supra), the court found that the gas company relied upon its computer, which made many mistakes; that gas services were shut off even though bills were paid; that “ the defendant’s collectors and clerical employees were hostile, arrogant, and unyielding in dealing with consumers whose gas service had, rightly or wrongly, been terminated”; that “ The evidence as a whole revealed a rather shockingly callous and *750 impersonal attitude upon the part of the defendant, which relied Uncritically upon its computer, located in a distant city, and the far from infallible clerks who served it, and paid no attention to the notorious uncertainties of the postal service.” The court concluded (p. 244) that the gas company’s procedures “ are clearly offensive to even the most elementary notion of what constitutes due process.” The court did not state what procedures were required to afford due process, recognizing that “ The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U. S. 886, 895.”
In the Bronson case (350 F. Supp. 443, 444, supra), “ The Facts as set forth by the plaintiff -suggest an Orwellian nightmare of computer control which breaks down through mechanical and programmers’ failures and errors.” Continued demands by computer were made upon plaintiff to pay her bill and she was threatened with the shutoff of her utility services even though she had sent to Consolidated Edison a check for the amount demanded. The court was reluctant to make a final determination, without a full hearing, as to whether the “ shutoff” practices of Consolidated Edison complied with the requirements of due process. It did recognize, however (pp. 448-449), that “ While it is clear that the Constitution requires a prior hearing when an entitlement is threatened with termination by the state, there is no precise form that such hearing must take. Due process, when taken from principle to practice, demands only that what is available be fundamentally fair to the individual in light of the specific facts and circumstances of a given situation. (Mullane v. Central Hanover Trust Co., 339 U. S. 306)”. While stating (p. 449), “It may even be the case that affording a delinquent customer 5 days’ notice of termination, given the remedies available to those who would contest the utility’s claims, is a constitutionally accepted form of prior hearing in this contest ’ ’, the court found fault with the form of notice. The notice of discontinuance of service was abrupt and ‘ ‘ bore only the simple warning: turn-off notice — we are sorry, but your service WILL BE DISCONTINUED UNLESS THE TOTAL AMOUNT SHOWN BELOW IS PAID BY [DATE].” (p. 450). No indication was given in the notice that anyone at Consolidated Edison'would listen to any dispute the plaintiff might have concerning his bill. The court concluded (p. 450):
“ Whatever form of hearing is ultimately determined appro *751 priate in this case, it is clear now that customers such as Mrs. Bronson are entitled to more adequate notice.”
Apparently as a result of the decision in the Bronson case, the Public Service Commission adopted regulations governing the form of the notice to be given before discontinuing utility services. On November 10, 1972, 11 days after the decision in the Bronson case, the Public Service Commission amended its regulations by adding a new Part 143 to Subchapter D of Title 16 of the New York official compilation of Codes, Rules and Regulations. Section 143.2 of the new Part 143 sets forth the required form of the notice to discontinue services. The, notice, in addition to the amount of the unpaid bill, must also state the address and phone number of the electric company the customer may contact in reference to his account. The notice must also have printed on its face in bold print the following:11 this is a final disconnect notice, to avoid inconvenience, BRING THIS NOTICE TO THE ATTENTION OF THE COMPANY WHEN PAYING THIS BILL.”
Here, the notice sent by the Rochester Gras and Electric Corporation to the plaintiffs was more than the abrupt notice given by the Consolidated Edison in the Bronson case, and it complied with the new regulations of the Public Service Commission. In addition to the required language in bold print, it contained the following: “a review of your account shows, as OF THE DATE OF THIS NOTICE, AN UNPAID AMOUNT OF $( ). WE ASK YOU TO PAY THIS AMOUNT WITHOUT DELAY. IF THERE IS SOME REASON FOR NON-PAYMENT, PLEASE NOTIFY US IMMEDIATELY.”
Any person receiving such a notice who disputed the amount stated as unpaid would reasonably expect that representatives of the company would listen to his reason for not paying the amount.
The facts here are not similar to those in the Palmer and Bronson cases. No claim is made by plaintiffs that the Rochester Gras and Electric Corporation has made computer errors or has acted in an arrogant manner. Moreover, neither plaintiff disputes the bill the company has asked him or her to pay. There is no showing here that the plaintiffs or anyone else have been denied due process. The “ shutoff ” notice invites the customer to notify the company of any reason why the amount shown on his account has not been paid and there is no proof that the company has refused to listen to and investigate the claim of any customer who disputes the amount shown on his account. In short, there is no indication here *752 that the company’s procedures have not been “fundamentally fair
While not applicable to the present case, it is of interest to note that the Public Service Commission has adopted new regulations designed to cnre the abuses found by the courts in the Palmer and Bronson cases. By regulations adopted on May 2, 1973, the commission has required utility companies to establish and file with the commission procedures for the prompt and fair investigation of customer complaints in regard to utility bills. These regulations enjoin the utility companies from discontinuing service until at least five days after their investigations are completed (16 NYCRR. 143.8 [a]) and if the determination after the investigation is adverse to the customer, the utility is required to advise the customer of his right to make a complaint to the Public Service Commission (16 NYCRR 143.8 [b]). Should the customer make a complaint to the Public Service Commission, the Public Service Commission may then preclude the discontinuance of service pending the resolution of the complaint (16 NYCRR 11.2 [d]).
'Since plaintiffs have failed to demonstrate that they have been denied due process, there is little likelihood that they will ultimately succeed in this action. The motion for temporary injunction is, therefore, denied.