Albert A. Oppido, J.
This action was brought against the Long Island Lighting Company (hereinafter referred to as LILCO), the Long Island Water Company (hereinafter referred to as LIW), and the New York State Public Service Commission (hereinafter referred to as the PSC), by the plaintiffs, Leona and Samuel M. Levine, on behalf of themselves and all other persons who are consumers of electricity and water service in Nassau County and New York State, for judgment (1) declaring unconstitutional section 15 of the Transportation Corporations Law and section 89-b of the Public Service Law and (2) enjoining and restraining LILCO and LIW from discontinuing electric and water service to plaintiffs’ home in Oceanside, New York.
The PSC and LILCO have each moved for a judgment dismissing the complaint against them on the ground that the complaint does not state a cause of action against them. LIW has moved for a judgment dismissing the complaint on the grounds that (1) the plaintiffs do not have legal capacity to sue in a class action; (2) that the action should not proceed in the absence of a necessary party; and (3) that the complaint fails to state a cause of action.
While the arguments advanced by LIW in support of its contentions: (1) that plaintiffs do not have legal capacity to sue in a class action and (2) that the action should not proceed in the absence of a necessary party, are not unpersuasive, the constitutional questions presented by plaintiffs involving, as they do, fundamental rights, are questions which are apt to recur and accordingly, this court deems it appropriate to determine the present proceeding on the basis of a consideration of the constitutional questions raised herein. (See, e.g., Blye v. Globe-Wernicke Realty Co., 33 N Y 2d 15, 19; Goldenthal v. New York Tel. Co., 68 Misc 2d 749, 751, affd. 40 A D 2d 825.)
Since each of the defendants has moved, pursuant to paragraph 7 of subdivision (a) of CPLR 3211 for a judgment dismissing the complaint for failure to state a cause of action, the complaint must be liberally construed and the court must assume the truth of the allegations and give the pleader the benefit of every favorable inference (Kober v. Kober, 16 N Y 2d 191; *249 Lavigne v. Allen, 36 A D 2d 981; Rainbow Shop Patchogue Corp. v. Roosevelt Nassau Operating Corp., 34 A D 2d 667).
The plaintiffs allege, in essence, that they have been threatened with discontinuance of their electric and water services because of their alleged nonpayment of balances due therefor; that such balances are in dispute; that the statutes which authorize discontinuance of the electric and water service are unconstitutional as violative of due process; that while the plaintiffs have had a “ conference ” with the PSC and LILCO, they have been deprived of a formal hearing on both the electric and water complaints by the PSC; and that the PSC has closed its investigation and has refused to issue an order to LILCO and LIW to cease and desist from discontinuing the electric and water service to plaintiffs.
Both section 15 of the Transportation Corporations Law and section 89-b of the Public Service Law provide, in substance, that if any person neglects or refuses to pay for gas, electric or water, the respective companies may discontinue such service after 5 days’ written notice in the case of gas and electric service and 15 days’ written notice in the case of water service. The plaintiffs challenge the constitutionality of these two sections on the ground that they do not provide them with notice and a fair hearing.
Plaintiffs’ right to ultimate relief in this action depends upon their establishing (1) that the discontinuance of gas, electric and water service under the above-mentioned statutes involves State action; and (2) that the Due Process Clause of the Fourteenth Amendment requires that before gas, electric and water service may be discontinued, the plaintiffs must be afforded a fair hearing before an impartial hearing officer or similar procedural safeguards.
In determining the question of State action, we must look at the extent to which the State has reserved power to control the operations of LILCO and LIW and the amount of power, usually reserved to the State, which has been given to these two utilities. In the opinion of this court, virtually every aspect of LILCO’s and LIW’s operations is subject to State statutes, the regulations promulgated thereunder, and the supervision of the PSC. In exchange for the State-guaranteed return on the respective investments of LILCO and LIW and the State-bestowed, State-protected natural monoply each enjoys, both LILCO and LIW are required to furnish reasonably adequate service at reasonable rates and each must submit to full and complete government supervision as set forth in articles 4 and 4-B of the Public Service Law, and the regulations set forth in *250 chapters II and Y of 16 NYCRR. For example, under the Public Service Law, the PSC is given general supervisory powers over gas, electric and water companies (§§ 66, 89-c), it can grant, deny or revoke their respective franchises (§§ 68, 89-e), it approves rates (§■§ 65, 89-b) and it investigates and inspects most aspects of their operations (§§ 66, 67, 89-c and 89-d). In addition, both LILCO and LIW have the right to condemn property (Transportation Corporations Law, §§ 11, 45) and, in the case of LILCO, it has the right to enter upon private property under specified conditions (Transportation Corporations Law, § 14) and to enter upon private property to discontinue service (Transportation Corporations Law, § 15).
A careful analysis of the above-mentioned statutes and regulations demonstrates the intertwining of public regulation with private ownership and leads this court to the conclusion that both LILCO and LIW operate as agents of the State under the supervision and regulation of the PSC and that the discontinuance of gas, electric and water service involves State action (see Ihrke v. Northern States Power Co., 459 F. 2d 566, revd. on mootness 409 U. S. 815; Palmer v. Columbia Gas of Ohio, 479 F. 2d 153; Jackson v. Metropolitan Edison Co., 483 F. 2d 754; Bronson v. Consolidated Edison Co. of N. Y., 350 F. Supp. 443; cf. Lucas v. Wisconsin Elec. Power Co., 466 F. 2d 638, cert, den. 409 U. S. 1114).
We turn now to the question of whether the procedures currently employed by LILCO and LIW for the discontinuance of electric, gas, and water service result in a deprivation of plaintiffs ’ liberty or property without due process of law in contravention of the Fourteenth Amendment. As Mr. Justice Frankfurter stated in his concurring opinion in Griffin v. Illinois, 351 U. S. 12, 20-21: “ ‘ Due process ’ is, perhaps, the least frozen concept of our law — the least confined to history and the most absorptive of powerful social standards of a progressive society.”
Plaintiffs’ due process argument rests upon several recent Supreme Court decisions which require notice and an opportunity to be heard before certain administrative action may be undertaken (see Fuentes v. Shevin, 407 U. S. 67 [hearing required before goods can be repossessed]; Bell v. Burson, 402 U. S. 535 [hearing required before an uninsured motorist’s driving license can be suspended]; Goldberg v. Kelly, 397 U. S. 254 [notice and hearing required before welfare benefits can be terminated]).
In the opinion of this court, the consequences of shutting off gas, electric and water service can inflict severe hardships upon *251 the consumer that far transcend the loss of driving privileges or the repossession of goods or even the denial of welfare benefits, and accordingly, the same constitutional safeguards are applicable in the former as in the latter. (See, e.g., Palmer v. Columbia Gas of Ohio, 342 F. Supp. 241, 244, affd. 479 F. 2d 153, supra; Davis v. Weir, 359 F. Supp. 1023; Davis v. Weir, 328 F. Supp. 317; Bronson v. Consolidated Edison Co. of N. Y., supra, 350 F. Supp. 443; Stanford v. Gas Serv. Co., 346 F. Supp. 717; Lamb v. Hamblin, 57 F. R. D. 58; but see Jackson v. Metropolitan Edison Co., 483 F. 2d 754, supra; Lucas v. Wisconsin Elec. Power Co., 466 F. 2d 638, cert. den. 409 U. S. 1114, supra; Turner v. Rochester Gas & Elec. Corp., 74 Misc 2d 745; Goldenthal v. New York Tel. Co., 68 Misc 2d 749, affd. 40 A D 2d 825, supra.)
As the Supreme Court stated in Fuentes v. Shevin (407 U. S. 67, 80, supra): “ ‘ Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.’ * * * It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. ’ ” (See, also, Blye v. Globe-Wernicke Realty Co., 33 N Y 2d 15, supra.)
The court also stated that “ due process tolerates variances in the form of a hearing ‘ appropriate to the nature of the case ’ ”. (Fuentes v. Shevin, supra, p. 82.)
With these principles in mind, we must examine the current disconnection procedures employed by LILCO and LIW. As previously stated, LILCO’s authorization to discontinue electric and gas service is found in section 15 of the Transportation Corporations Law and provides for 5 days’ written notice before the utility can terminate its service to the customer. In the case of LIW, its authorization to discontinue water service is found in section 89-b of the Public Service Law and provides for 15 days’ written notice before the waterworks company can terminate its service to its customer. Apparently, as a result of Judge Tyler’s decision in Bronson v. Consolidated Edison Co. of N. Y. (350 F. Supp. 443, supra), the PSC amended its regulations governing the termination of gas, electric and water service by adding two new parts to the Official Compilation of Codes, Bules and Begulations, viz., 16 NYCBB 143 et seq. and 16 NYCBB 533 et seq. Thereafter, in May, 1973, several of these sections were amended. These regulations now set forth the manner by which customer complaints are to be handled.
According to 16 NYCBB 143.1 and 16 NYCBB 533.1, no electric or waterworks corporation can discontinue electric, gas or *252 water service for nonpayment of bills or failure to post a required deposit until a specified time after notice has been served on the person supplied, viz., in the case of an electric customer, five days after personal service on him of the written notice or five days after the person supplied has signed for or refused a registered letter containing the written notice to the person supplied; in the case of a water customer, the notice provisions are identical to the above periods; however, an additional 10-day period is provided in each instance.
Regulations 16 NYCRR 143.2 and 16 NYCRR 533.2 set forth the required form of the notice of discontinued services. The notice, in addition to setting forth the amount to be paid to avoid discontinuance, must state the reason for service discontinuance and the address and phone number of the office of the utility or waterworks company the customer may contact in reference to his account.
Regulations 16 NYCRR 143.8 and 16 NYCRR 533.8 enjoin the utility or waterworks company from discontinuing service until at least five days after their investigation of the customer’s complaint is completed. If the determination is adverse to the customer, the customer must be notified of his right to make a complaint to the PSC. If the customer invokes the complaint procedures of the PSC, discontinuance of service cannot take place until after the PSC’s determination.
Regulation 16 NYCRR 11.1 provides that a customer’s complaint to the PSC need not be in writing and may be initiated by telephone or in person at the offices of the PSC. The complaint should provide the PSC with (1) the name and address of the complainant or complainants; (2) the name and address of the person or corporation complained against; (3) the act or omission complained of with the approximate date; and (4) what relief has been sought from the person or corporation complained of, and the response, if any, from such person or corporation.
Regulation 16 NYCRR 11.2 describes the PSC procedures available for the resolution of complaints against utility and waterworks companies and provides that, in the usual case of billing or deposit disputes, discontinuance of service is precluded during the PSC investigation of the complaint. This procedure gives the customer or his representative the right to present his side of a dispute to an impartial PSC officer either by telephone or in person. This officer evaluates all the pertinent material submitted by the complainant and the utility or waterworks company. A conference-type hearing, attended by the PSC complaint officer, the company and the complainant, *253 accompanied by such friend adviser or attorney as the complainant desires, is available to the complainant if he wishes. Either of the disputants may obtain a written statement of the determination of the PSC officer, including a brief reason for the conclusion.
If the above procedures cannot resolve the dispute, the PSC on its own initiative or at the request of the complainant or the utility or waterworks company may call a public hearing utilizing the procedures set forth in 16 NYCRR 2.3, except where the PSC determines that judicial resolution of the dispute may be more appropriate.
Regulation 16 NYCRR 2.3 provides that at the PSC hearing, parties to the proceeding will be afforded a reasonable opportunity to present evidence and examine and cross-examine witnesses orally and stenographic minutes will be taken.
In the opinion of this court, the above procedures provide for a “ regularized, orderly process of dispute settlement ” prior to termination and comply with the requirements of due process (Boddie v. Connecticut, 401 U. S. 371, 375; see, also, Palmer v. Columbus Gas of Ohio, 479 F. 2d 153, 167-169, supra; Lamb v. Hamblin, 57 F. R. D. 58, 63-64, supra).
While the procedures above set forth comport with due process, it is the plaintiffs’ contention that the PSC refused to hold a “ formal hearing ”, as required by their regulations. In the opinion of this court, the proper vehicle for challenging this action on the part of PSC is under article 78 of the CPLR (see, e.g., Industrial Group Serv. v. Cantor, 24 A D 2d 1032; Siegel v. Lassiter, 6 A D 2d 879, mot. for lv. to app. den. 5 N Y 2d 709). While this court may treat the instant action as a special proceeding (Cohen v. Department of Social Servs., 37 A D 2d 626, affd. 30 N Y 2d 571), under paragraph 2 of subdivision (b) of CPLR 506, a proceeding against the PSC must be commenced in the Supreme Court, Albany County. Accordingly, this action is transferred to that court (Cohen v. Department of Social Servs., supra).