OPINION OF THE COURT
Norman C. Ryp, J.
Does “Power to the People” include constitutional procedural due process besides energy transmissions? This is the nuclear issue of first impression in this current case.
A. INTRODUCTION
Motions, under Calendar Nos. 4 and 5 of May 27, 1980, are consolidated for disposition, following subsequent final submission. Defendant, Consolidated Edison Company of New York, Inc. (Con Edison) moves, pursuant to CPLR 3211 (subd [a], pars 2, 7), to dismiss plaintiff’s first and second causes of action for lack of subject matter jurisdiction and failure to state a cause of action. Defendant, the *25 Public Service Commission of the State of New York (PSC) joins in Con Edison’s motions and, also, seeks dismissal of the damage claims against PSC alleged in the first and second causes of action contained in paragraph 72 of the complaint. Plaintiff, Carmen Montalvo, suing upon behalf of herself and her eight infant children, ranging in age from 5 to 17 years of age, cross-moves, under CPLR 3212 (subd [e]), for partial summary judgment on her first and second causes of action.
B. FACTS
The essential facts are uncontroverted.
Plaintiff, mother of eight minor children, supported solely by semimonthly grants of $396.50 from the New York City Department of Social Services (DOSS), resided prior to October 15,1978, at 315 Fox Street, apartment No. 2B, Bronx, New York, where the rent, which plaintiff duly paid, included gas and electrical usage. Con Edison provided utility service, under account number 31-4909-0540-0040-0, held in the name of defendant, Ramon Luis Lopez (Lopez), landlord, as indicated by Con Edison’s records. Plaintiff, at that time, had no account with Con Edison and had never before applied for utility service.
On October 15, 1978, plaintiff moved from apartment 2B, 815 Fox Street, to apartment No. 5G, 2108 Davidson Avenue, both in Bronx, New York, and then duly applied to Con Edison for gas and electrical utility service. On that same date, October 15,1978, Con Edison denied plaintiff’s application for utility service alleging she owed $387.40 arrears on her Fox Street apartment and demanded full payment before furnishing plaintiff any utility services at her Davidson Avenue apartment. Plaintiff contends she informed Con Edison at the time of her application that Lopez, not plaintiff, was responsible for all utility service charges on the Fox Street apartment. Plaintiff’s attempts to explain these facts were futile and she was informed by Con Edison that DOSS would allow her a grant to pay this utility bill so as to obtain utility service.
About two weeks later, on November 1, 1978, plaintiff obtained a grant to fully pay Con Edison said amount of $387.40 from DOSS and it appears that on November 10, *26 1978, 26 days after plaintiff’s application, Con Edison first commenced utility service to • plaintiff at her Davidson Avenue apartment. Plaintiff and her eight infant children lived without any gas or electrical utility service during this entire 26-day period. Subject DOSS grant was deemed an advance, which DOSS later recouped over a five-month period, by deducting $39.65 installments from nine checks and $30.55 from a tenth check; said DOSS checks were given plaintiff to provide food and other necessities of life for herself and her eight children.
Three days later, on November 13, 1978, Con Edison billed plaintiff an additional $520 under the Fox Street apartment account. Plaintiff paid $52 on December 6, 1978, believing said moneys to be owing on her then current Davidson Avenue apartment but Con Edison credited to the Fox Street apartment account.
Thereafter, plaintiff failed to make timely payments to Con Edison on the Davidson Avenue apartment account partly because $52 was applied to the Fox Street apartment account and partly due to her decreased net social service grant (including the $39.65 DOSS deduction). Thereafter, on January 5,1979, plaintiff allegedly received notice that $132.60 was owed to Con Edison and payment required therefor to prevent termination of utility service. Five days later, on January 10, 1979, plaintiff’s utility service was shut off and terminated. Sixteen days later on January 26, 1979, following effective intervention by the Legal Aid Society and PSC, plaintiff’s utility service was restored. Thus, plaintiff was without utility service for a total of 42 days out of 103 days from October 15, 1978 to January 26, 1979.
Thereafter, three months later, Con Edison forwarded plaintiff a check dated April 17, 1979, in the amount of $300.28 and sent a letter to plaintiff’s attorney which stated Con Edison was canceling “the accrued charges at 815 Fox Street in Mrs. Montalvo’s name”.
c. parties’ contentions
Plaintiff contends: she informed Con Edison immediately upon her October 15, 1978 utility service application that her former landlord, Lopez, not plaintiff, owed the *27 $387.40; Con Edison failed and refused to verify this fact despite its ability to do so but was told Con Edison’s decision was final; was never informed of her right(s) to appeal either to a Con Edison supervisor or to an outside authority; was unaware of PSC’s existence; was never offered a Spanish interpreter or Spanish-speaking Con Edison employee; that the initial billing dispute, caused by Con Edison’s wrongfully holding plaintiff responsible for Fox Street apartment account, had a ripple effect, which caused hardship and deprivation to her entire family for many months, commencing with Con Edison’s refusal to provide utility service (from October 15 to November 10, 1978), extending to later termination of utility service (from January 10 to 26, 1978), lack of moneys for food and other necessities of life owing to DOSS’ nine months’ grant deduction as reimbursement for DOSS’ November, 1978 mistaken payment to Con Edison.
Plaintiff further contends residential gas and electrical utility service, upon due application, is a property right and entitlement pursuant to the due process clauses of both articles I and VI of the New York State Constitution (first cause of action) and the Fourteenth Amendment to the United States Constitution (second cause of action); defendants’ failure to provide any notice and an opportunity to be heard after refusing plaintiff utility service directly caused all their subsequent personal injuries. Plaintiffs seek a total of $100,000 in compensatory damages from all defendants, jointly and severally, based upon personal injuries, substantial hardship, extreme mental and emotional distress, suffering and humiliation; and, in addition, $300,000 in punitive damages only against defendants Con Edison and Lopez for their wanton, willful and malicious acts and omissions.
Defendant, Con Edison, contends the first and second causes of action should be dismissed: its acts or omissions do not constitute “state action”; plaintiff failed to exhaust her administrative remedies; primary subject matter jurisdiction to resolve subject matter utility dispute resides in PSC; any failure by PSC to promulgate rules and regulations is proper subject of a CPLR article 78 proceeding; *28 therefore, plaintiff fails to state a cause of action, as a matter of law.
Defendant, PSC, contends that both the first and second causes of action should be dismissed; as moot, with utility service having been subsequently provided by Con Edison, and that any future disruption in service is governed by PSC rules and regulations (16 NYCRR Parts 11, 143); for lack of subject matter jurisdiction to award monetary damages against PSC, since PSC is a New York State agency that can be sued for money, only in the Court of Claims under sections 8 and 9 of article VI of the New York State Constitution; lack of primary subject matter jurisdiction which lies with PSC and plaintiff’s failure to exhaust her administrative remedies by not first petitioning PSC for the remedial action requested herein; because denial of service does not constitute “state action” or denial of due process; and that any acts and omissions of Con Edison are not attributable to PSC.
D. APPLICABLE LAW AND CONCLUSIONS OF LAW
I. MOOTNESS OR LACK OF JUSTICIABLE CASE OR CONTROVERSY OWING TO RESTORATION OF UTILITY SERVICE
(a) Applicable Law
“[J]udicial reluctance to decide questions which need not be reached should yield when, as here, important constitutional issues are raised and the controversy is of a kind likely to recur.” (Blye v Globe-Wernicke Realty Co., 33 NY2d 15, 19; Matter of Jones v Berman, 37 NY2d 42; Matter of Cole v Goldberger, Pedersen & Hochron, 95 Misc 2d 720.) The court is precluded from finding the controversy is moot if the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the same complaining party will be subject to the same action again (First Nat. Bank of Boston v Bellotti, 435 US 765; Weinstein v Bradford, 423 US 147, 148) so that the harm alleged is characterized as “ ‘capable of repetition yet evading review’”. (Memphis Light, Gas & Water Div. v Craft, 436 US 1; Roe v Wade, 410 US 113; Doe v United States Civ. Serv. Comm., 483 F Supp 539.) Furthermore, in the event of voluntary cessation of allegedly illegal conduct, contro *29 versy remains over the challenged practices and public interest in having the legality of practices settled militates against a determination of mootness (United States v W. T. Grant Co., 345 US 629, 633; Doe v United States Civ. Serv. Comm., supra). Even in the absence of a pending threat of termination of service, plaintiff’s claims for compensatory and punitive damages suffice to create a justiciable controversy. (Memphis Light, Gas & Water Div. v Craft, supra; Blye v Globe-Wernicke Realty Co., supra.)
(b) Conclusions of Law
Accordingly, the court concludes that defendants’ contentions of mootness or lack of justiciable case or controversy herein are untenable based upon the foregoing case law.
II. EXHAUSTION OF ADMINISTRATIVE REMEDIES
(a) Applicable Law
Exhaustion of one’s administrative remedies is generally required prior to obtaining judicial review (Touche Ross & Co. v Securities & Exch. Comm., 609 F2d 570; Beltre v Kiley, 470 F Supp 87, affd 614 F2d 1285; Mobil Oil Corp. v Department of Energy, 469 F Supp 1119; Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52), except where it would be futile (Beltre v Kiley, supra; Watergate II Apts. v Buffalo Sewer Auth., supra) or when the issue is solely a legal question, resolution of which requires a judicial determination, not administrative expertise (Beltre v Kiley, supra; Mobil Oil Corp. v Department of Energy, supra; 1 NY Jur, Administrative Law, § 182). It appears, as noted above, that the essential facts are uncontroverted. Thus, the issues raised herein are solely questions of law obviating the need for exhaustion of administrative remedies.
III. “STATE ACTION” BY PSC AND/OR CON EDISON
(a) Applicable Law
The court is cognizant of the principle enunciated in Shelley v Kraemer (334 US 1, 13) “that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.” The ques *30 tion whether particular conduct is private or State action can be resolved “[o]nly by sifting facts and weighing circumstances” so that “the nonobvious involvement of the State in private conduct be attributed its true significance.” (Burton v Wilmington Parking Auth., 365 US 715, 722.) To correctly analyze the true significance of defendants’ conduct herein, this court must apply the standards of Jackson v Metropolitan Edison Co. (419 US 345) which require a detailed inquiry into the particulars involved to determine whether there is a sufficiently close nexus between the State and the challenged activity of the regulated entity. (Jackson v Metropolitan Edison Co., supra, at p 351.)
Con Edison is an intensively and extensively regulated utility, subject to the direct supervision of the State of New York’s PSC, PSC rules and regulations, statutory regulations, pursuant to the Public Service Law, the Transportation Corporations Law and case law. In exchange, Con Edison has been granted powers traditionally reserved to the State, notably the right of eminent domain (Transportation Corporations Law, art 2, § 11, subds 3-6); through its State-granted franchise (Public Service Law, §68) it has a monopoly on gas and electrical service inside a specific area and guaranteed profits (Public Service Law, § 65). Furthermore, pursuant to section 12 of the Transportation Corporations Law (L 1909, ch 219, amd L 1926, ch 762, eff Oct. 1, 1926, amd L 1965, ch 189, eff May 17, 1965), Con Edison has an obligation to provide service to all applicants inside its franchise, with severely limited exceptions not pertinent herein. Con Edison is also barred by sudivision 2 of section 15 of the Transportation Corporations Law (L 1967, ch 495, eff April 24, 1967) from discontinuing gas or electricity utility service for nonpayment of bills to any poor person, as plaintiff herein, receiving public assistance where payments are made directly by the public assistance agency. (See Harrell v Consolidated Edison Co. of N.Y., 91 Misc 2d 714.)
Moreover, under certain circumstances a gas or electric corporation, as Con Edison, is barred from discontinuing gas or electric utility service to any aged, blind or disabled *31 person receiving public assistance. (See Transportation Corporations Law, § 13.)
The depth of State involvement in Con Edison’s operations is clear and convincing evidence that Con Edison performs a quasi-public function, while acting as an agent of the State (Bronson v Consolidated Edison Co. of N.Y., 350 F Supp 443) satisfying the standards set forth in Jackson v Metropolitan Edison Co. (supra).
■ The applicable law herein makes this action clearly distinguishable from Jackson v Metropolitan Edison Co. (supra), wherein the court held that the State of Pennsylvania had never statutorily granted Metropolitan Edison Co. monopoly status. In contrast New York State legislation (Public Service Law, § 68) grants Con Edison, within its franchise area, including Bronx County (where plaintiffs reside) exclusive utility service rights. In addition, while the court in Jackson v Metropolitan Edison Co. held that Pennsylvania courts have rejected the concept that furnishing utilities is a State or municipal function, in contrast, the New York courts in numerous decisions have ruled that State-franchised utilities provide their essential services as agents for the State of New York (Matter of Consolidated Edison Co. of N.Y. v Public Serv. Comm. of State of N.Y., 47 NY2d 94; Bronson v Consolidated Edison Co. of N.Y., 350 F Supp 443, supra; Levine v Long Is. Light. Co., 76 Misc 2d 247; Hayes v Niagara Mohawk Power Corp., 63 Misc 2d 581) and the New York State Legislature has enacted the Public Service and Transportation Corporations Laws and created the PSC which promulgated supplementary rules and regulations to govern the distribution of this essential utility service to the residents of New York.
“In the relevant legal sense, Con Ed is by no stretch of the imagination a purely private enterprise. The State of New York, by an extensive statutory and regulatory scheme, has circumscribed almost every aspect of the utility’s activities and has, by the same means, granted it powers not available to a typical private concern * * * This involvement, both in breadth and purpose, indicates that the state has franchised Con Ed to carry on what is clearly a quasi-public function. Thus, the utility is licensed *32 to and does act as an agent of the state.” (Bronson v Consolidated Edison Co. of N.Y., supra, at pp 445-446.)
“The State has so far insinuated itself into a position of interdependence *** that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so ‘purely private’ as to fall without the scope of the Fourteenth Amendment.” (Burton v Wilmington Parking Auth., 365 US 715, 725, supra.)
(b) Conclusions of Law
Accordingly, the court concludes that the threshold question whether conduct by Con Edison herein was State action must be answered in the affirmative, triggering the issues of the applicability of the due process clause of the Fourteenth Amendment, under the United States Constitution.
IV. GENERAL APPLICABILITY OF DUE PROCESS CLAUSE TO RESIDENTIAL UTILITY SERVICE
(a) Applicable Law
The due process clause of the Fourteenth Amendment to the United States Constitution provides: “nor shall any State deprive any person of life, liberty, or property, without due process of law”. The court must now determine whether residential electrical service is a property right entitled to Fourteenth Amendment due process safeguards.
The Fourteenth Amendment has frequently been cited as the protector of individual rights. The definitions of the terms “liberty” and “property” have grown as our society has evolved, increasing their scope to insure that adequate protection is a reality for all.
“ ‘Due Process’ is, perhaps, the least frozen concept of our law — the least confined to history and the most absorptive of the powerful social standards of a progressive society.” (Griffin v Illinois, 351 US 12, 20-21, Frankfurter, J. [concurring].) Recognizing that citizens and individuals are increasingly dependent upon governmental agencies or private corporations that provide essential services, the courts have intervened and directed that *33 procedural due process be afforded in areas formerly deemed beyond the scope of the Fourteenth Amendment, thereby enlarging the class of enumerated entitlements. Property interests are created by existing laws to secure benefits and support claims of entitlement. “To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” (Board of Regents v Roth, 408 US 564, 577.)
“The right to the use of electricity, gas and other utilities is an entitlement which is necessary to sustain life in today’s world and should surely be protected in the same manner as proprietary rights to stoves, furniture and other artifacts *** It may even be that such an entitlement should be given the same protection as the right to shelter.
“The seizure of a utility meter and the discontinuance of gas and electricity work tremendous hardships on the users of these essentials *** This is particularly true of the poor who may not be able to pay ‘under protest’ or seek other plenary relief.” (Consolidated Edison Co. of N.Y. v Vezcanino, 77 Misc 2d 475, 477-478.)
As noted above, Con Edison has a positive statutory duty to supply gas and electrical service, pursuant to section 12 of the Transportation Corporations Law except under defined circumstances where there is no bona fide dispute over it as to a user’s nonpayment, which can be characterized as its paramount obligation to the public, in exchange for which it receives guaranteed income and monopoly status. (Matter of Consolidated Edison v Public Serv. Comm. of State of N.Y., 47 NY2d 94, 109-110, supra.) The principal obligation of utilities is to serve the public (Hayes v Niagara Mohawk Power Corp., 63 Misc 2d 581, 583, supra, revd on other grounds 35 AD2d 1072, affd 30 NY2d 579; Levine v Long Is. Light. Co., 76 Misc 2d 247, supra). Utilities cannot choose their customers or discriminate between customers by extending unreasonable conditions and preferences to some but must serve all on a basis of fairness and equality. (Brewer v Brooklyn Union Gas Co., 33 Misc 2d 1015 1019.)
*34 Moreover, it is clear that when a utility corporation seeks to cut off an existing energy supply to a residential consumer the burden of proof is upon the utility. (Levine v Brooklyn Union Gas Co., 146 App Div 464; Manley v Consolidated Edison Co. of N.Y., 187 Misc 366; Esposito v Consolidated Edison Co. of N.Y., 68 NYS2d 868.)
Where however, directly distinguishable from subject facts, it is undisputed that a customer, residential or commercial, has failed or refused to pay a prior utility bill at the same or another location, New York courts have upheld utility service denials pending payment or termination both at common law (People ex rel. Kennedy v Manhattan Gas Light Co., 45 Barb 136) or by statute (currently Transportation Corporations Law, §§ 12, 15, L 1967, ch 495, eff April 24, 1967) and case law thereunder. (Bennett v Eastchester Gas Light Co., 40 App Div 169, 54 App Div 74; Clark v Utica Gas & Elec. Co., 224 App Div 448; Matter of Sulkin v Brooklyn Edison Co., 145 Misc 484, affd 237 App Div 850; Dworman v Consolidated Edison Co. of N.Y., 26 AD2d 535.) Other State courts in Georgia, Idaho, Maine, Maryland, Massachusetts, Mississippi, New Mexico and Texas view utility service denial for prior bill default at another address as improper. (See Right of Public Utility to Deny Service at One Address Because of Failure to Pay for Past Service Rendered at Another, Ann., 73 ALR3d 1292.)
The courts have recognized that gas and electricity are absolute necessities of life, the absence of which evokes severe hardship and endangers health and safety. (Memphis Light, Gas & Water Div. v Craft, 436 US 1, supra; Moose Lodge No. 107 v Irvis, 407 US 163; Bronson v Consolidated Edison Co. of N.Y., 350 F Supp 443, supra; Consolidated Edison of N.Y. v Public Serv. Comm. of State of N.Y., supra; Lee v Consolidated Edison of N.Y., 95 Misc 2d 120; Consolidated Edison Co. of N.Y. v Vezcanino, 77 Misc 2d 475, supra; Velardi v Consolidated Edison Co. of N.Y., 63 Misc 2d 623.)
“It is beyond doubt that electric service can become as vital to the existence and livelihood of an individual as a driver’s license or a welfare check *** when termination of such service is threatened the same constitutional safe *35 guards apply.” (Bronson v Consolidated Edison Co. of N.Y., supra, at p 447.)
Moreover, “discontinuance of gas and electricity work tremendous hardships on the users of these essentials” (Consolidated Edison Co. of N.Y. v Vezcanino, supra, at p 478, citing Laprease v Raymours Furniture Co., 315 F Supp 716), particularly true of the poor who may not be able to pay “under protest” or seek other plenary relief. (See Bell v Burson, 402 US 535; Sniadach v Family Fin. Corp., 395 US 337.) Such severe hardship or essential need is not nullified by lack of willfulness subsequent correction, as done by Con Edison over three months later herein.
This court finds no real difference, nor a rational or equitable distinction in severe hardship impact or essential need for residential gas or electricity utility service to a present user whose utility service is disconnected or a past or future user whose utility service is not connected at all. This court does not pass upon the issue of whether the foregoing principles apply to a commercial utility user, which is not in issue herein.
Moreover, DOSS has recognized utility service is a basic human need required to maintain a minimum standard of living, by its authorization of $387.40 to pay the alleged arrears and the established DOSS policy behind this action.
Further, public policy considerations require that residential service not be refused, except in rare instances. Multiple dwellings, wherein plaintiffs reside, abound in urban and suburban New York State with voluminous codes developed to avoid fires. Use of past alternative methods to obtain heat and light (i.e., candles, hurricane lamps, kerosene lamps) can be characterized as fire hazards in this context, that increase the risk of fire, endangering users and innocent bystanders.
(b) Conclusion of Law
Therefore, this court concludes, as a matter of law, for any person to live in a minimal amount of residential safety, comfort and normalcy, gas and electrical usage are essential and constitute a property right under the due process clause of the Fourteenth Amendment of the United *36 States Constitution. As noted above, whether this applies to a commerical utility user is not in issue herein.
V. MINIMUM PROCEDURAL DUE PROCESS REQUIREMENTS SPECIFICALLY APPLICABLE TO RESIDENTIAL UTILITY SERVICE
(a) Applicable Law
(1) Reasonable Notice.
“An elementary and fundamental requirement of [procedural] due process *** is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” (Mullane v Central Hanover Trust Co., 339 US 306, 315.) Notice to an aggrieved or potential customer of the existence and availability of dispute resolution procedures must be given to comply with minimal procedural due process standards. (See Memphis Light, Gas & Water Div. v Craft, 436 US 1, supra; Goss v Lopez, 419 US 565; Fuentes v Shevin, 407 US 67; Boddie v Connecticut, 401 US 371; Goldberg v Kelly, 397 US 254; Sniadach v Family Fin. Corp., supra; Mullane v Central Hanover Trust Co., supra; Davis v Weir, 497 F2d 139; Matter of Jones v Berman, 37 NY2d 42, supra; Blye v Globe-Wernicke Realty Co., 33 NY2d 15, supra.)
(2) Hearing.
“The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision-making when it acts to deprive a person of his possessions * * * Its purpose, more particularly, is * * * to minimize substantively unfair or mistaken deprivations of property” as herein. (Fuentes v Shevin, 407 US 67, 80-81, supra.)
After being so informed the affected individual must be afforded a reasonable opportunity to be heard in a meaningful time and manner. (Bell v Burson, 402 US 535, supra; Sniadach v Family Fin. Corp., supra; Matter of Jones v Berman, supra.) Such a hearing must be fundamentally fair to the individual in light of the facts and circumstances therein. (Mullane v Central Hanover Trust Co., supra; Bronson v Consolidated Edison Co. of N.Y., 350 F Supp 443, supra.) In addition, the court must examine each situation so that the type of hearing ordered will be best *37 suited to the circumstances and capabilities of those involved while satisfying procedural due process. (Greenholtz v Nebraska Penal Inmates, 442 US 1; Goss v Lopez, supra; Morrissey v Brewer, 408 US 471; Fuentes v Shevin, supra; Goldberg v Kelly, supra; Hagopian v Knowlton, 470 F2d 201; Bronson v Consolidated Edison Co. of N.Y., supra.)
An informal hearing can be sufficient to satisfy due process requirements, in the proper context (Memphis Light, Gas & Water Div. v Craft, supra; Boddie v Connecticut, supra; Mullane v Central Hanover Trust Co., supra; Madera v Board of Educ., 386 F2d 778). However, in each instance an impartial decision maker is essential (Fuentes v Shevin, supra; Goldberg v Kelly, supra).
The rights to counsel, to cross-examine witnesses, to a written decision and to appellate or judicial review, in the proper context have been ruled required to satisfy procedural due process requirements. (See Greenholtz v Nebraska Penal Inmates, supra; Goss v Lopez, supra; Morrissey v Brewer, supra; Goldberg v Kelly, supra.)
(b) Facts — Application
An analysis of the subject facts herein prompts recognition of the unequal bargaining positions that exist between Con Edison and potential residential customers, necessitating strict compliance with procedural due process to adequately protect an applicant’s rights. Here, not only was there a bona fide dispute over plaintiff’s nonpayment, Con Edison later conceded the validity of plaintiffs’ claim. Unfortunately, because of the unequal bargaining position, plaintiffs, though correct, were deprived for 42 days of essential utility service.
The court in Bronson v Consolidated Edison Co. of N.Y. (supra) aptly deplored the unequal bargaining power of the residential consumer vis-a-vis utility companies. “The courts * * * have recognized the distressing realities of the customer’s plight. They have found that, more frequently than not, the customer is confronted by an impersonal bureaucracy held together by computers, wherein inefficiency and a resultant high level of error are the norm, and unresponsiveness or ‘run-arounds’ the only answer to his inquiries” (p 448). At present, an applicant *38 must either comply with Con Edison’s demands or live without life’s essential utility service for an unknown and indefinite period. This absence of choice was noted by Justice William O. Douglas in his dissent to Public Utilities Comm. v Pollak (343 US 451, 468): “In one sense it can be said that those who ride the streetcars do so voluntarily. Yet in a practical sense they are forced to ride, since this mode of transportation is today essential for many thousands. Compulsion which comes from circumstances can be as real as compulsion which comes from a command.”
Furthermore, an attempt to comply by paying “under protest” may be an impossibility for the poor or result in substantial hardship, as in the case herein. (See Transportation Corporations Law, §15.) Such a result directly contradicts the purposes of procedural due process. “From its founding the Nation’s basic commitment has been to foster the dignity and well-being of all persons within its borders.” (Goldberg v Kelly, 397 US 254, 264-265, supra.)
The court continues, “ ‘[t]he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal.’” (Goldberg v Kelly, supra, at p 266, citing Kelly v Wyman, 294 F Supp 893, 904-905.)
E. FINDINGS OF FACT AND CONCLUSIONS OF LAW
After careful consideration of all material and relevant facts as well as applicable law, this court finds and concludes that
(1) Con Edison’s refusal and failure to provide residential gas and electricity service for a total of 42 out of 103 days where there was a bona fide dispute as to nonpayment by plaintiff, constituted a deprivation of a right or entitlement protected by the due process clauses contained in articles I and VI of the New York State Constitution and the Fourteenth Amendment of the United States Constitution.
(2) Con Edison is compelled, except where nonpayment is undisputed, when denying or refusing gas or electricity *39 service to a past or future residential customer (new residential customer) as defined in 16 NYCRR 90.5 (a) (2) and 225.2 to comply with all requirements of procedural due process.
(3) No fair, just and equitable determination of the nature and quality of such compliance can be made without further input from the parties to be included in an order to be settled herein.
(a) The court notes that PSC, in paragraph 17 of its supporting affidavit, dated March 13, 1980, states it is developing utility notice requirements for denial of utility service similar to that provided for termination thereof.
(b) Recently, the New York State Legislature passed the so-called “Utility Bill of Rights”, originally drafted by the Public Utility Law Project, that defines consumer rights, including installation of utility service with certain procedural due process requirements. (See New York Times, July 4, 1981, p 23, col 6.)
(c) All counsel are directed to supplement the record by affidavit, brief or hearing within 20 days after publication hereof in the New York Law Journal. To most effectively and expeditiously settle an order herein, counsel are directed to attend a conference in Room 148 at 2:00 p.m. within 30 days (if on a weekend or legal holiday, first court day thereafter) after publication hereof in the New York Law Journal and telephone chambers (374-8579) to confirm the date certain thereof.
(4) Accordingly, by reason of the foregoing, Con Edison’s CPLR 3211 (subd [a], pars 2, 7) motions to dismiss the complaint’s first and second causes of action are denied. PSC’s CPLR 3211 motion to dismiss the complaint and for summary judgment is held in abeyance, pending a hearing or conference herein. Plaintiff’s CPLR 3212 (subd [e]) motion for partial summary judgment on the complaint’s first and second causes of action only is granted, with the third through sixth causes of action severed.
After one conference, settlement of an order and completion of pretrial disclosure proceedings, if any, the case shall proceed to trial upon all outstanding issues of fact in the remaining causes of action herein without undue delay.