CARMEN MONTALVO, on Behalf of Herself and Her Infant Children, Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Appellants, et al., Defendant.

First Department, March 29, 1983

### APPEARANCES OF COUNSEL

*Bernard Hulkower* and *Lisa B. Mann* for Consolidated Edison Company of New York, Inc., appellant.

*Lawrence G. Malone* of counsel (*David E. Blabey,* attorney), for Public Service Commission of the State of New York, appellant.

*Stacy Cromidas* of counsel (*David Goldfarb,* attorney), for respondent.

OPINION OF THE COURT

KUPFERMAN, J. P.

Defendants appeal from an order and judgment allowing partial summary judgment in favor of plaintiff on her constitutional claims against Consolidated Edison Company of New York (Con Ed), and the Public Service Commission (PSC) (110 Misc 2d 24).

The judgment held that Con Ed's denial of plaintiff-respondent's application for residential utility service constituted "State action," depriving respondent of a property right protected under the due process clauses of both the New York State (Art I, § 6), and the United States (14th Amdt) Constitutions. The Fourteenth Amendment claim is asserted pursuant to section 1983 of title 42 of the United States Code.[1]

Special Term predicated liability against the PSC on the theory that the commission's failure to have promulgated regulations which would have required that first-time applicants be afforded procedural due process safeguards before their applications for residential service could be denied, constitutes "State action".

We hold that the acts of Con Ed in denying respondent's application, under the circumstances of this case, constitute private action not properly attributable to the State of New York, and that the inaction of the PSC in its rule-making capacity affords an insufficient predicate to support a finding of "State action". Therefore, the judgment and order should be reversed, and judgment entered dismissing respondent's first two causes of action with prejudice.

Plaintiff-respondent Montalvo, in her own right and on behalf of her eight minor children, maintains this action seeking declaratory and injunctive relief as well as both

---

1. That section provides in relevant part: "§ 1983. Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

compensatory and punitive damages[2] for personal and economic injuries allegedly suffered as a result of being deprived of utility service for two extended periods totaling approximately 42 days.

On October 15, 1978, according to the complaint, the Montalvos moved from an apartment on Fox St. to one on Davidson Ave., both in The Bronx. Con Ed admits that when respondent applied for gas and electric service in her own name at the new address, Con Ed denied her application on the ground that utility charges from her Fox St. apartment remained past due.

Respondent maintains that the landlord of the Fox St. premises, Ramon Lopez, agreed that, under the terms of their oral, month-to-month lease, utility charges would be included in the rent. Lopez is named as a defendant in this action, but is not a party to this appeal.

Respondent submits that she attempted to explain to Con Ed personnel at the time her application was denied that the Fox St. charges were against the landlord's account and not her obligation under their lease, but was unsuccessful. Montalvo spoke only Spanish at that time. She states in her complaint that at no time was she afforded the opportunity to present her dispute to Spanish-speaking personnel of Con Ed.

After Con Ed denied respondent's application, she obtained an advance on her entitlement from the Department of Social Services (DOSS), and paid in full the $387.40 that Con Ed was then demanding. Con Ed began furnishing gas and electric service at the Davidson Ave. address on November 10, 1978.

On November 13, 1978, Con Ed rendered a "final bill" to respondent for utility charges from the Fox St. apartment seeking an additional $520. In December, respondent made a $52 partial payment which Con Ed posted against the Fox St. account. Respondent asserts that she intended the payment to be applied against her account at Davidson Ave.

---

2. Counsel for respondent stated at oral argument that the purpose of asserting the constitutional cause of action against Con Ed, in addition to the negligence claim, was to support respondent's claim for punitive damages.

In January, 1979, respondent received a notice from Con Ed stating that if she did not pay the sum of $132.60 within two business days, electric service at the Davidson Ave. address would be discontinued. As a result of respondent's failure to make that payment, electricity was shut off at the Davidson Ave. apartment from January 10 until January 26, 1979.

After counsel from the Legal Aid Society interceded with the PSC on respondent's behalf, the PSC directed Con Ed to restore service to the Montalvos, to refund the amount previously collected for the Fox St. arrearages, and to cancel the remaining claim against respondent for the Fox St. arrearages. Con Ed complied in all respects.

The thrust of respondent's constitutional claims is that she was not afforded notice of any procedure for contesting her liability with respect to the Fox St. arrearages before her application was denied. She alleges that in fact no such procedure then existed, but the PSC refers us to regulations, then in effect, which set forth a procedure for resolving disputes over billings.[3] Thus, if denial of due process were applicable, respondent's claim would be grounded on lack of notice of the existence of the procedure.

Respondent alleges that Con Ed never advised her of any grievance procedure or even of the existence of the PSC. She states that Con Ed personnel told her to get an advance from DOSS to pay the charges which were her responsibility because she used the electricity.

Respondent argues that by the enactment of section 12 of the Transportation Corporations Law[4] the Legislature created an entitlement to residential electric service upon

---

**3.** See 16 NYCRR 143.8 (a), which provides in relevant part: "Billing disputes. (a) Every electric corporation shall establish procedures whereby any complaint filed with such corporation by any customer thereof in regard to any bill for service rendered or any deposit required will be promptly investigated in an appropriate and fair manner, with the result of such investigation being promptly reported to the complaining customer."

**4.** That section provides in relevant part: "upon written application of the owner or occupant of any building * * * and payment by him of all money due from him to the corporation, it shall supply gas or electricity as may be required". It is noteworthy that the Legislature amended section 12 of the Transportation Corporations Law, effective in 1981, to reflect the protections afforded recipients of public assistance by contemporane-

written demand, subject to certain conditions. Respondent characterizes this entitlement as a property right protected against deprivation as a result of State action under both due process clauses. Inasmuch as we find that the threshold requirement of State action is not met by the conduct of either Con Ed or the PSC, we do not consider whether section 12 of the Transportation Corporations Law creates such a protected right.

Special Term denied motions by Con Ed and the PSC to dismiss the first two causes of action, granted respondent's cross-motion for partial summary judgment, and severed for trial the remaining tort causes of action against Con Ed and Lopez. However, the court granted the PSC's motion to dismiss only to the extent of dismissing the damage claim without prejudice, but granted respondent leave to renew the cause in the Court of Claims.[5] Special Term declared that Con Ed's acts constituted "State action" for due process purposes, relying on *Bronson v Consolidated Edison Co. of N. Y.* (350 F Supp 443) for the dictum that Con Ed furnishes power as an agent of the State of New York. The decision stated that Con Ed's failure to afford respondent procedural due process protections before denying her application directly caused her alleged injuries.

Procedural due process safeguards apply only where the aggrieved party can show deprivation of a protected right as a result of "State action". Purely private conduct is not subject to the requirements of due process. Analysis of the cases deciding State action *vel non* suggests that the degree of State involvement required before due process will be deemed applicable varies with the factual setting. A stricter scrutiny of State involvement will be applied in a case involving racial discrimination in housing like *Shelley v Kraemer* (334 US 1), cited by Special Term, than in cases involving only property rights.

ous amendments of section 30 *et seq.* of the Public Service Law. Before those amendments, termination was only proscribed in such cases if utility payments were made directly by DOSS.

5. Inasmuch as we hold that respondent's constitutional claim against the PSC fails because of the absence of State action, we do not consider the correctness, at that stage of the proceeding, of Special Term's dismissal of respondent's damage claim with leave to renew the cause in the Court of Claims. (Cf. *Schaffer v Evans,* 57 NY2d 992.)

The inquiry set by the United States Supreme Court for deciding whether the acts of a public utility are attributable to the State for Federal due process purposes is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." (See *Jackson v Metropolitan Edison Co.,* 419 US 345, 351, citing *Moose Lodge No. 107 v Irvis,* 407 US 163.)

A further inquiry in deciding whether actions undertaken by private entities should be attributed to the State for due process purposes is whether the private entity is performing a public function exercising powers traditionally reserved exclusively to the State. (See *Jackson v Metropolitan Edison Co.,* 419 US, at p 352; but see *Flagg Bros. v Brooks,* 436 US 149, 172, n 8 [STEVENS, J., dissenting] [rejecting the requirement of exclusivity in favor of an inquiry "whether a particular action is a uniquely sovereign function"]; see, also, *Sharrock v Dell Buick-Cadillac,* 45 NY2d 152, 162 [resolving a dispute over lien foreclosure is an exclusively governmental function].)

To establish the required nexus between the State and the challenged action, for Fourteenth Amendment purposes, where the impetus for that conduct is private, a showing is required that the State has put its own weight behind a practice by ordering it. (See *Jackson v Metropolitan Edison Co.,* 419 US, at p 357.) The mere fact that a State permits an action while not compelling it, is insufficient under the Fourteenth Amendment to convert otherwise private conduct into State action. (See *Flagg Bros. v Brooks,* 436 US, at p 165.)

Respondent advances numerous grounds on which to predicate a finding of State action, among them, Con Ed's monopoly status within its franchise area, the high degree of State regulation, and the enactment of section 12 of the Transportation Corporations Law, which, respondent argues, "creates a duty not existing at common law, thereby imparting State action." Respondent finally argues that New York State has delegated to Con Ed the traditional State function of dispute resolution.

The United States Supreme Court has rejected each of respondent's grounds as insufficient to support a finding of State action under the Federal Constitution. In *Jackson v Metropolitan Edison Co. (supra)* the court found no State action where a privately owned and operated utility in Pennsylvania discontinued service for nonpayment. The fact that the instant case involves denial of initial service rather than discontinuance of existing service does not render *Jackson* inapposite. Nor does the absence of an equivalent to section 12 of the Transportation Corporations Law in the Pennsylvania statutory framework sufficiently distinguish *Jackson*.

The court in *Jackson* dismissed the customer's argument that extensive and detailed regulation converted the private action to State action (419 US, at p 350) and similarly rejected the contention that the monopoly status of the utility made its actions attributable to the State, holding that there was an insufficient nexus between the monopoly status and the challenged action. (*Supra,* at p 352.)

Regarding respondent's argument that the enactment of section 12 of the Transportation Corporations Law imparts State action by creating a duty not existing at common law, we note that the nexus required is between the State and the denial of the protected right, not between the State and the creation of that right.

Viewing the pleadings most favorably to respondent, what happened in this case is that Con Ed incorrectly billed respondent for utility charges for which she had not contracted to pay. Section 12 of the Transportation Corporations Law in no way authorizes a utility to withhold service from a prospective customer who does not owe the company money. Con Ed's denial of respondent's application would, therefore, be in contravention rather than pursuant to State authorization. However, we express no opinion of the merits of respondent's remaining causes of action against Con Ed or Lopez.

On the question of delegation of a sovereign function to a private entity, respondent urges that New York State has delegated to Con Ed the traditional State function of dispute resolution. Respondent argues that Con Ed's bargain-

ing power of withholding service until the customer pays the disputed charges constitutes the power to resolve unilaterally any dispute over billing. This argument cannot be sustained. As respondent has demonstrated in this case, the PSC is receptive to hearing grievances over billings and will intervene to settle disputes. Moreover, an aggrieved customer is in no way barred from the courts of the State should the administrative remedy prove insufficient. We note also that under the Fourteenth Amendment, the Supreme Court has held that resolution of disputes between debtor and creditor is not traditionally an exclusive governmental function of the sovereign. (See *Flagg Bros. v Brooks,* 436 US, at p 161.)

In light of the foregoing, it is clear that Con Ed's denial of respondent's application cannot be deemed "State action" for purposes of the Fourteenth Amendment. Determining whether the due process clause of the State Constitution may afford greater protection than does the Federal provision, by setting a lower threshold requirement of State involvement (see *Sharrock v Dell Buick-Cadillac,* 45 NY2d, at pp 159-160), requires analysis of the following determinative factors listed by the Court of Appeals in *Sharrock* (p 158): "the source of authority for the private action; whether the State is so entwined with the regulation of the private conduct as to constitute State activity; whether there is meaningful State participation in the activity; and whether there has been a delegation of what has traditionally been a State function to a private person."

Regarding the source of authority for the private action, we refer to the following language by the Court of Appeals in *Sharrock:* "For State action purposes, there is a fundamental distinction between a statute which, in regulating previously lawful conduct, does nothing more than merely acknowledge its lawfulness * * * and one which authorizes otherwise impermissible or unconstitutional conduct" (45 NY2d, at p 161). The statute on which respondent relies, section 12 of the Transportation Corporations Law, merely authorizes the time-honored commercial practice of withholding future services from a customer who has not paid for services previously rendered.

We decline to hold that the State of New York is so entwined in the regulation of Con Ed that the acts of Con Ed should be deemed State activity. In *Taylor v Consolidated Edison Co. of N. Y.* (552 F2d 39, 45), a case involving the question whether termination of service for meter tampering constituted State action, the Second Circuit, in reaching a finding of no State action, described the significance of regulation: "State regulation of utility termination, however, is not synonymous with state responsibility for the lack of a pretermination hearing. The existence of state action does not depend upon New York's regulation of termination or its approval by order of Con Ed's tariff but upon whether it has involved itself in the decision not to grant a hearing."

As the New York Court of Appeals recognized in setting forth these factors for consideration, satisfaction of one of these criteria may not necessarily be determinative of the presence of State action. (*Sharrock v Dell Buick-Cadillac,* 45 NY2d, at p 158.)

New York State did not meaningfully participate in the activity here asserted to be State action. The action of which respondent complains, denial of her application for service, is conducted wholly by personnel of Con Ed. The only State participation in the activity was the intervention of the PSC on respondent's behalf, exercising its supervisory powers to investigate respondent's dispute and directing that she not be further deprived of service. (See *Taylor v Consolidated Edison Co. of N. Y.,* 552 F2d, at p 46.)

Under the final factor set forth by the Court of Appeals for consideration, delegation of a sovereign function to a private entity, we find respondent's arguments equally devoid of merit under the State Constitution as under the Federal. In the case at bar there is no delegation of traditionally sovereign adjudicative functions as in *Sharrock v Dell Buick-Cadillac (supra).*

In that case, the New York Court of Appeals held that State action was present for due process purposes under the State Constitution when a garageman forecloses on a statutory lien, even though the United States Supreme

Court had previously held that no State action was present under the Fourteenth Amendment in an analogous setting, foreclosure of a warehouseman's lien under section 7-210 of the Uniform Commercial Code.

Under sections 200, 201, 202 and 204 of the New York Lien Law, the distinguishing factor that prompted the Court of Appeals in *Sharrock* to afford greater protection under the State Constitution than would be provided under the Federal Constitution was the finality of the sale. The court stated that the Lien Law permitted the lienholder to "bypass the courts", and that it "insulates the garageman from civil or criminal liability arising out of the sale". (45 NY2d, at pp 161-162.) As noted previously, respondent is free to pursue a remedy against Con Ed in the courts of New York.

Regarding respondent's claims for damages and injunctive relief against the PSC, we note at the outset that the claim for injunctive relief is moot. In the interim between the denial of respondent's application and the pendency of this appeal, the Legislature has enacted the Home Energy Fair Practices Act (L 1981, ch 713), which provides detailed safeguards to protect persons receiving public assistance from being deprived of utility service. (see Public Service Law, § 30 *et seq.*)

Respondent's argument that the PSC's inaction constitutes "State action" depriving respondent of a constitutionally protected right is legally insufficient. The commission's failure to promulgate regulations which might have prevented respondent's injury was not alleged to have been willful. In its rule-making capacity, the PSC is a delegate and alter ego of the Legislature, acting pursuant to the police power. (See *Matter of Trustees of Vil. of Saratoga Springs v Saratoga Gas, Elec. Light & Power Co.,* 191 NY 123, 134.) We refer in this regard to the statement of the Second Circuit describing the adequacy of rule-making by the PSC: " 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " (*Taylor v Consolidated Edison Co. of N. Y.,* 552 F2d 39, 45, *supra.*) Inasmuch as we decline to hold that the inaction of the PSC constitutes "State action", respondent has failed to state a constitutional

claim against the PSC. Therefore, the PSC's motion to dismiss should be granted in its entirety.

Accordingly, the order and judgment, entered on March 29, 1982, at Supreme Court, New York County (Ryp, J.), which granted partial summary judgment in favor of respondent on the first two causes of action on constitutional grounds, and denied motions by Con Ed and the PSC to dismiss, except for granting so much of the PSC's motion as sought to dismiss the damage claim, but granted leave to renew the cause in the Court of Claims, should be reversed, on the law, without costs, judgment entered dismissing in their entirety respondent's first two causes of action, and a declaration made that no State action is present under the circumstances of this case.

Asch, J. (dissenting in part). I agree with Justice Kupferman "that the inaction of the PSC in its rule-making capacity affords an insufficient predicate to support a finding" of constitutional violation. As he points out in his opinion, "stricter scrutiny of State involvement will be applied in a case involving racial discrimination in housing like *Shelley v Kraemer* (334 US 1), cited by Special Term, than in cases only involving property rights." There, the Supreme Court held that a private agreement to exclude persons of designated race or color from the use or occupancy of real estate for residential purposes did not run counter to the Fourteenth Amendment. The violation was in the fact that a State court, an official agency of the State, affirmatively enforced them. It would represent a considerable extension of the holding of that case for this court to decide that that inaction of the Public Service Commission (PSC) with respect to the exercise of its discretionary rule-making authority created a constitutional claim in the plaintiff against the agency.

It is with respect to plaintiff's claim against Consolidated Edison Company of New York (Con Ed) that Justice Kupferman and I part company.

The court below held that the denial of utility service to Mrs. Montalvo constituted State action to which the due process clauses of the Federal and State Constitutions would be applicable (110 Misc 2d 24). I believe that the

order and judgment should be affirmed with respect to Con Ed.

To invoke the protective mantle of the Constitution, increasingly, the courts are occluding the line between what constitutes "private" as compared with "State" action. (Compare, e.g., *Civil Rights Cases,* 109 US 3, with *Burton v Wilmington Parking Auth.,* 365 US 715; *Peterson v Greenville,* 373 US 244; *Lombard v Louisiana,* 373 US 267; *Griffin v Maryland,* 378 US 130; *Robinson v Florida,* 378 US 153; *Atlanta Motel v United States,* 379 US 241.) The Supreme Court has gone so far as to condemn racial exclusion by a private restaurant which merely rented space in a public authority building (*Burton v Wilmington Parking Auth.,* 365 US 715, *supra*). It is not necessary to take even such a leap in legal logic to reach the conclusion that the action by Consolidated Edison in this case constitutes "State action" and as a consequence is in violation of the Constitution. It is not necessary to go beyond judicial doctrine, established authority, or the facts set out in the record.

Whether privately owned public utilities are engaged in State action for this purpose has frequently turned on the answers to the following questions:

(1) How extensive is the State regulation? (See *Palmer v Columbia Gas of Ohio,* 479 F2d 153; *Lucas v Wisconsin Elec. Power Co.,* 466 F2d 638);

(2) To what extent is the utility affected with the public interest? (*Jackson v Metropolitan Edison Co.,* 419 US 345); and

(3) Is the utility a publicly franchised monopoly? (*Public Utilities Comm. v Pollak,* 343 US 451, 462.)

In *Sharrock v Dell Buick-Cadillac* (45 NY2d 152) the New York Court of Appeals enumerated the factors which, either in the aggregate or individually, can lead to a determination that there is significant State involvement, creating due process rights, in statutorily authorized private conduct. Those are: "the source of authority for the private action; whether the State is so entwined with the regulation of the private conduct as to constitute State activity; whether there is meaningful State participation

in the activity; and whether there has been a delegation of what has traditionally been a State function to a private person" (*supra,* at p 158). The court further stated (p 160): "In contrast to the due process clause of the Fourteenth Amendment, which is phrased in terms of State deprivation of life, liberty or property, section 6 of article I of the New York Constitution guarantees that '[n]o person shall be deprived of life, liberty or property without due process of law.' Conspicuously absent from the State Constitution is any language requiring State action before an individual may find refuge in its protections. That is not to say, of course, that the due process clause of the State Constitution eliminates the necessity of any State involvement in the objected to activity (see *Stuart v Palmer,* 74 NY 183, 188). Rather, the absence of any express State action language simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect to the Federal provision." It must be noted that section 12 of the Transportation Corporations Law provides: "§ 12. Gas and electricity must be supplied on application * * * [U]pon written application of the owner or occupant of any building * * * and payment by him of all money due from him to the corporation, it shall supply gas or electricity as may be required for lighting such building". It is apparent that the Transportation Corporations Law significantly altered the legal obligations of utility companies to prospective customers as they existed at common law in New York State. (See, e.g., *United States Light & Heat Corp. v Niagara Falls Gas & Elec. Light Co.,* 47 F2d 567, 569; see, also, *People ex rel. Cayuga Power Corp. v Public Serv. Comm.,* 226 NY 527, 532.)

Con Ed and the PSC both cite *Jackson v Metropolitan Edison Co.* (419 US 345). In that case, the court found that a service termination by a privately owned utility did not constitute State action even though the Pennsylvania utility was extensively regulated. The Supreme Court held that a business obligated to serve the public is not deemed a State actor unless the act under scrutiny involves the "exercise * * * of some power * * * traditionally associated with sovereignty" (419 US, at p 353).

Section 12 of the Transportation Corporations Law, however, delegated the power of dispute resolution to Con Ed. This is comparable to the situation in *Sharrock* (*supra*) where the Lien Law delegated to a garageman (a private individual) the exclusive power to resolve disputes by selling a car, without notice and hearing, on which the garageman had allegedly performed work and for which the customer was assertedly indebted. Section 12 of the Transportation Corporations Law gives a prospective customer a broad right to service upon compliance with certain preconditions (including the one relevant here — payment of all arrears owed) and imports to the utility itself the unilateral power to resolve such disputes by simply refusing service. In *Jackson* (*supra*) there was no State law comparable to section 12 of the Transportation Corporations Law *mandating* utility service upon application by a potential customer.

Special Term relied upon *Bronson v Consolidated Edison Co. of N. Y.* (350 F Supp 443). In that case, the District Court found that section 15 of the Transportation Corporations Law creates an entitlement to continued service, conditioned on the payment of current bills, and decided that due process applies to the determination of what bills are owing (*supra, at pp 446-447*). The appellants cite *Taylor v Consolidated Edison Co. of N. Y.* (552 F2d 39) as overruling *Bronson*. It must be noted, however, that in *Taylor* service had been terminated by reason of meter tampering, which was a subject not covered by section 15 of the Transportation Corporations Law. Appellants are also mistaken in equating this case with *Jackson* (*supra*). There was no statute comparable to section 12 of the Transportation Corporations Law involved in that case.

Section 12 of the Transportation Corporations Law substantially modified pre-existing common-law rights (cf. *Taylor v Consolidated Edison Co. of N. Y., supra*). Section 12 of the Transportation Corporations Law mandated that utilities were to provide utility service upon application of potential customers. An exception was made in the case of applicants owing arrears. The utilities (including Con Ed) were left to resolve any dispute involving arrearages unilaterally. The PSC did not promulgate regulations ensur-

ing notice and a hearing in regard to such disputes. There was, in effect, an abdication of State authority in regard to dispute resolution to Con Ed (see *Sharrock v Dell Buick-Cadillac, supra; Bronson v Consolidated Edison Co. of N. Y., supra*).

Section 12 of the Transportation Corporations Law also created a species of entitlement in regard to applications for utility service. Due process standards are applicable in regard to such entitlements (cf. *Greenholtz v Nebraska Penal Inmates,* 442 US 1).

The court below was correct in finding State action on the part of Con Ed and in determining that due process was violated. (*Sharrock v Dell Buick-Cadillac, supra; Bronson v Consolidated Edison Co. of N. Y., supra.*) *Taylor* and *Jackson (supra)* did not deal with the statutory situation present in this case.

Con Ed's tariff did not permit it to withhold service unless it complied with the notice requirements of the PSC's 16 NYCRR Part 143. This Con Ed did not do since it did not advise Ms. Montalvo of the review procedures to which she was entitled.

The PSC and Con Ed contend that the first two causes of action should have been dismissed as moot. They contend that the Home Energy Fair Practices Act, article 2 (§§ 30-50) of the Public Service Law, provides for the notice and review (§ 31, subd 2) denied Montalvo. But that section was enacted in 1981, effective October 19, 1981, and is not retroactive. Moreover, paragraph 72 of the complaint sets forth damage claims in regard to the first two causes of action (see *Blye v Globe-Wernicke Realty Co.,* 33 NY2d 15).

The appellants contend that Montalvo should have exhausted administrative remedies. However, exhaustion of administrative remedies is not a prerequisite to standing under section 1983 of title 42 of the United States Code (*Patsy v Florida Bd. of Regents,* 457 US 496; see, also, *Kovarsky v Brooklyn Union Gas Co.,* 279 NY 304, 313). Constitutional questions are for resolution by the courts (*Weinberger v Salfi,* 422 US 749, 765).

Accordingly, the order and judgment of the Supreme Court, New York County, entered March 29, 1982, which

granted partial summary judgment in favor of plaintiff on the first two causes of action and denied motions by both defendants to dismiss, except for granting so much of the PSC's motion as sought to dismiss the damage claim, but granted leave to renew the cause in the Court of Claims, should be modified, on the law and facts, to dismiss in their entirety plaintiff's first two causes of action solely as against defendant PSC and to declare that no State action by said defendant PSC is present under the circumstances herein, and otherwise affirmed, without costs.

SANDLER, LYNCH and MILONAS, JJ., concur with KUPFERMAN, J. P.; ASCH, J., dissents in part in an opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on March 29, 1982, reversed, on the law, without costs and without disbursements, judgment entered dismissing in their entirety respondent's first two causes of action, and a declaration made that no State action is present under the circumstances of this case.