**Felipe RODRIGUEZ, Plaintiff,**

v.

**BEECHMONT BUS SERVICE, INC., Bruce Mitchel Tree, President of Beechmont Bus Service, Inc., and James Carello, in his capacity as Supervisor of Beechmont Bus Service, Inc., Defendants.**

**No. 01 CIV 1071(WCC).**

United States District Court, S.D. New York.

Nov. 21, 2001.

Cronin & Byczek, LLP, Lake Success, NY (Christina A. Leonard, Esq., Of Counsel), for Plaintiff.

Goodstein & West, New Rochelle, NY (Paula Johnson Kelly, Esq., Of Counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNOR, Senior District Judge.

Plaintiff Felipe Rodriguez brings the instant action against defendants Beechmont Bus Service, Inc. ("Beechmont"), Bruce Mitcheltree, in his capacity as president of Beechmont and James Carello, in his capacity as supervisor of Beechmont, pursuant to 42 U.S.C. § 1981, Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), the New York State Human Rights Law, Exec. Law § 296 *et. seq.* ("NYHRL"), the New York State Constitution ("N.Y. Const.") and the United States Constitution. Following his discharge from Beechmont, plaintiff alleges, *inter alia:* (1) disparate treatment on account of race, color and national origin; (2) disparate impact on Hispanic employees; (3) hostile work environment; (4) retaliation in response to plaintiff's cooperation with a United States Office of Occupational Safety and Health Administration ("OSHA") investigation and for making internal complaints about the alleged retalia-tion; (5) violation of due process under N.Y. CONST. art I, § 6; and (6) violations of the First, Fifth and Fourteenth Amendments of the United States Constitution. Defendants move for partial dismissal of the Second Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) and for an award of costs and attorneys' fees pursuant to FED. R. CIV. P. 11(b)(2). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following statement of the facts is based on the allegations in plaintiff's Second Amended Complaint, which, for the purposes of this motion, we assume to be true.[1] Plaintiff is of Puerto Rican descent. (2d Am.Complt.¶ 10.) He was employed as a bus mechanic in the maintenance department of Beechmont from March 1999 through August 10, 1999. (*Id.* ¶ 18.) Carello, also employed by Beechmont, was plaintiff's supervisor. (*Id.* ¶ 17.) Beechmont was owned by Mitcheltree and was in the business of transporting students to and from public schools and was responsible for maintaining and repairing its fleet of buses. During the relevant time period, Beechmont had approximately 125 employees, including seventy-five African–Americans, fifty Caucasians and four Hispanics. (*Id.* ¶ 22.)

Plaintiff is a dealer-trained and New York State certified mechanic with over fifteen years experience. (*Id.* ¶¶ 20, 21.) Throughout his career, he suffered no disciplinary problems and received satisfactory evaluations. (*Id.* ¶ 21.) Plaintiff was the only Hispanic mechanic employed by

---

1. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

Beechmont. (*Id.* ¶ 23.) During his tenure with Beechmont, plaintiff was subjected to numerous discriminatory acts. Specifically, plaintiff's immediate supervisor, Joe Moss, gave plaintiff undesirable and dangerous assignments based on his race rather than ability. (*Id.* ¶¶ 24–26.) On one such occasion, plaintiff was forced to work past normal hours to help repair a broken bus. (*Id.* ¶ 27.) The other non-Hispanic mechanics were not assigned such undesirable tasks. (*Id.* ¶ 28.)

Plaintiff was also subjected to discriminatory and racist remarks by Beechmont's non-Hispanic employees. (*Id.* ¶ 33.) At least one non-Hispanic mechanic, Arthur St. Clair Philip, referred to plaintiff as "spic" in Moss's presence. (*Id.* ¶ 35.) On numerous occasions, plaintiff complained to Moss about the discriminatory work assignments and the racist remarks. (*Id.* ¶¶ 29, 36.) After Moss blithely dismissed plaintiff's complaints, plaintiff complained to Carello about the way he was being treated by his fellow employees and Moss. (*Id.* ¶ 31.) In spite of these repeated complaints, defendants failed to take any action to remedy the discriminatory treatment. In fact, defendants continued to assign plaintiff to work with Philip, the same employee who had previously subjected plaintiff to racial epithets. (*Id.* ¶ 37.)

During May, June and July of 1999, plaintiff repeatedly complained to defendants about a potentially dangerous working condition concerning the unsafe placement and use of jacks and the lack of safety equipment. (*Id.* ¶ 40.) Plaintiff was advised by defendants that his concerns were unwarranted and that there had never been an accident at the worksite. (*Id.* at 42.)

On or about August 4, 1999, Philip was killed when a bus collapsed on him while he was making repairs. Plaintiff believes that the accident was the result of the same unsafe working conditions to which he had previously alerted defendants. (*Id.* ¶ 43.) Plaintiff cooperated fully with the subsequent investigation by OSHA. (*Id.* ¶ 44.) He advised the investigators of the various safety violations and dangerous conditions existing at Beechmont, and informed them that he previously advised defendants of the problem. (*Id.* ¶ 47.) Plaintiff later learned that the fatal accident resulted from the failure of a mechanic to secure the brakes properly. (*Id.* ¶ 49.) The negligent mechanic was not terminated and did not suffer any adverse employment action. (*Id.* ¶ 50.)

On August 5, 1999, Carello instructed plaintiff not to return to work following the accident. At the same time, Carello advised plaintiff that he was not being fired. (*Id.* ¶ 48.) Nonetheless, on August 10, 1999, defendants terminated plaintiff's employment. (*Id.* ¶¶ 51–53.) Plaintiff was informed that other employees did not feel comfortable working with him because he cooperated with OSHA and that he was being terminated because of downsizing and budgetary necessity. (*Id.* ¶¶ 54, 57–58.) Carello prepared a letter of recommendation indicating that plaintiff had a good employment record and that his termination was the result of downsizing and budgetary constraints. (*Id.* ¶ 59.)

Immediately following plaintiff's termination, defendants posted a job advertisement for plaintiff's former position. Defendants hired a man of Haitian descent approximately ten days later. (*Id.* ¶¶ 61–62.)

Plaintiff alleges that defendants' proffered reasons are merely pretextual, and that he was actually terminated on account of his race and in retaliation for the internal complaints and for cooperating with the OSHA investigation. On or about October 5, 1999, plaintiff filed a Charge of

Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 8.) On November 21, 2000, plaintiff was issued a Notice of Right to Sue letter. (Id. ¶ 9). The instant action was commenced on February 13, 2001.

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss under Rule 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)).

Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978). Under the relaxed federal pleading requirements, it is enough that the pleading "contain 'a short and plain statement of the claim' sufficient to put the [adverse party] on notice of the grounds for which the [claimant] seeks relief." *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 291 (S.D.N.Y.1995) (Connor, J.) (quoting FED. R. CIV. P. 8(a)(2)). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice ... so as to enable [that party] to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised"). Although the pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." 2 MOORE'S FEDERAL PRACTICE § 12.34[1][b] at 12–60 (3d ed.).

### II. *National Origin Discrimination under 42 U.S.C. § 1981*

Plaintiff alleges that defendants discriminated against him on account of race, color and national origin in violation of 42 U.S.C. § 1981, which provides, in pertinent part, that:

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

Although "[t]he prohibition against racial discrimination encompasses discrimination based on ancestry or ethnic characteristics ... [i]t is also settled that Section 1981 does not prohibit discrimination on the basis of ... national origin." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998) (citing *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S.Ct.

2022, 95 L.Ed.2d 582 (1987)). Accordingly, to the extent plaintiff's § 1981 claim is based upon national origin discrimination, he can prove no set of facts that would entitle him to relief and defendants' motion is therefore granted. We note, however, that our holding has no impact on the portion of plaintiff's § 1981 claim alleging racial discrimination.

## III. *Title VII Claims*

### A. *Title VII Employer*

■ Defendants move to dismiss plaintiff's Title VII claims on jurisdictional grounds because the Second Amended Complaint fails to include the necessary allegation that Beechmont is an "employer" within the meaning of the statute. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. § 2000e(b). The term "industry affecting commerce" is defined as "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce...." *Id.* § 2000e(h). The term "commerce" is defined as "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof." *Id.* § 2000e(g). The Second Amended Complaint states, in pertinent part, that:

11. Defendant, BEECHMONT BUS SERVICE, INC., ... at all times relevant was a duly organized domestic corporation with its principal place of business located in New Rochelle, New York, County of Westchester.

12. At all times relevant, Defendant, BEECHMONT, was licensed to conduct business and/or commerce within the State of New York and was authorized to do so by the New York Secretary of State.

\*   \*   \*   \*   \*   \*

22. That at all times relevant, Defendant Beechmont had approximately 125 employees, composed of 75 blacks, 50 whites and 4 Hispanics.

Defendants argue dismissal is appropriate because there is no allegation that Beechmont is engaged in anything other than intrastate commerce or that Beechmont is an employer within the meaning of the statute. We disagree. Granting plaintiff the benefit of all reasonable inferences, we conclude that plaintiff has alleged sufficient facts to place defendants on notice of their Title VII claim and have thus satisfied the liberal pleading requirement of FED. R. CIV. P. 8(a). *See Salahuddin,* 861 F.2d at 42. We reasonably infer from the Second Amended Complaint that Beechmont is in the business of maintaining, repairing and operating school buses. (2d. Am.Complt.¶¶ 18–19.) Although plaintiff alleged only that Beechmont was authorized to conduct business within the State of New York, there is little doubt that the transportation industry potentially affects commerce within the meaning of Title VII. Therefore, while plaintiff could have taken more care in drafting the Second Amended Complaint, it is reasonable to infer that Beechmont is engaged in an industry affecting interstate commerce. At a minimum, we are unable to hold as a matter of law that plaintiff is unable to prove any set of facts to establish that Beechmont was an employer under Title VII.

■ Defendants' reliance on *Johnson v. Apna Ghar, Inc.*, No. 00 Civ. 7752, 2001 WL 293134 (N.D.Ill. March 23, 2001), is misplaced. Even assuming the case has precedential value, it is legally and factually distinguishable from the instant action. There, the court considered the Supreme Court's recent commerce clause jurisprudence in holding that a purely intrastate domestic violence shelter was not a Title VII "employer." *Id.* at *1. Although defendants may be correct in suggesting that the reach of the commerce clause is restricted, there is no doubt that "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *United States v. Morrison*, 529 U.S. 598, 609, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (quoting *United States v. Lopez*, 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)). Unlike *Johnson*, Beechmont is engaged in commerce through the operation and maintenance of buses. For the purposes of this motion, plaintiff is entitled to the reasonable inference that such buses, even if they travel only within state limits, use the same roads that are used by vehicles traveling interstate and that Beechmont purchases buses, fuel and replacement parts in interstate commerce. As a result, we conclude that plaintiff has sufficiently alleged that defendants affect interstate commerce. *See, e.g., Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 274–75, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (holding that a restaurant serving local people rather than transients "may impose a burden on interstate commerce by reducing its volume or distorting its flow" because it purchased food in interstate commerce); *A.B.T. Sightseeing Tours, Inc. v. Gray Line New York Tours, Corp.*, 242 F.Supp. 365, 369 (S.D.N.Y.1965) (holding that the sightseeing bus company affected interstate commerce because they "make substantial purchases of equipment, supplies, and indeed the buses themselves from sources outside the state") (citing *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964)). Accordingly, defendants' motion to dismiss this claim is denied.

**B. *Disparate Impact***

■■ To establish a prima facie case of disparate impact, a plaintiff "must show that a facially neutral employment policy or practice has a significant disparate impact." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir.1998) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). "Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient." *Id.* (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)). In *Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 160 (2d Cir.1991), the Second Circuit recognized that "underrepresentation of blacks might result from any number of factors, and it places an initial burden on the plaintiff to show that the specific factor challenged under the disparate impact model results in the discriminatory impact."

Plaintiff alleges in his Second Amended Complaint a claim under Title VII for disparate impact by virtue of the following:

73. Defendant, BEECHMONT, has maintained a pattern and practice of race discrimination against Hispanic employees with respect to the terms, conditions and privileges of their employment.

74. Defendant, BEECHMONT, by the use of facially neutral employment practices in regard to employee discipline, and on other occasions by the use of excessively subjective

standards caused a significant and adverse and discriminatory impact [on] Hispanic employees.

Plaintiff argues that "during the course of his employment with defendant BEECH-MONT, it was the practice of Supervisors to give plaintiff work assignments based upon plaintiff's race ... [and] to permit other non-Hispanic employees to continually subject plaintiff to racial and derogatory remarks....," and as a result "seventy-five of the approximately one hundred twenty-five employees of defendant BEECHMONT were black and four employees ... were Hispanic." (Pl. Mem. Opp. Mot. Dismiss at 14–15.)

We find these allegations insufficient to state a disparate impact claim under Title VII. Plaintiff failed to adequately identify a neutral policy that is alleged to have a disproportionate impact on Hispanic employees. Furthermore, plaintiff presents no statistical evidence to suggest that any such neutral policy or factor had a significant adverse impact. The facile assertion that Beechmont has only four Hispanic employees in their one hundred twenty-five member workforce is insufficient to satisfy plaintiff's pleading requirements. *See Brown,* 163 F.3d at 712 (dismissing plaintiff's discriminatory impact claim because the plaintiff failed "to connect [the] general statistics [cited] to any Coach policy"). Plaintiff implicitly concedes this issue in his opposition papers. Rather than identify a neutral employment policy with a statistically significant adverse impact, plaintiff argues not that he fell victim to a neutral policy but that he was subjected to deliberate discriminatory conduct. His arguments better resonate in support of plaintiff's claim for disparate treatment. Because the Second Amended Complaint fails to adequately allege a disparate impact claim, defendants' motion to dismiss this claim is granted.

## C. *Retaliation*

■ Title VII prohibits an employer from "discriminating against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e–3(a). The goal is " 'to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.' " *Galdieri–Ambrosini v. National Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988)). To establish a prima facie Title VII retaliation case, a plaintiff must demonstrate that: (1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) the employer was aware of that activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. *See Ramos v. Marriott Int'l, Inc.,* 134 F.Supp.2d 328, 346 (S.D.N.Y.2001) (Connor, J.). Plaintiff alleges that he was discharged in retaliation for filing numerous internal complaints and for cooperating with the OSHA investigation.

### 1. *Exhaustion Requirement*

■ Defendants assert that this Court has no jurisdiction over the claim because plaintiff failed to bring the claim in his EEOC charge. Generally, a court has no jurisdiction to hear claims that were not previously alleged in the EEOC Charge. *See Brown,* 163 F.3d at 712. The purpose underlying the exhaustion requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. United States Immigration & Naturalization Serv.,* 762 F.2d 193, 198 (2d Cir. 1985). However, the claim will be allowed

to go forward if it is "reasonably related" to the EEOC charge. *See Butts v. City of New York Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993); *Brown*, 163 F.3d at 712. A claim is "reasonably related" if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts*, 990 F.2d at 1402.

■ The EEOC Charge states:

I am a male who opposed discrimination and suffered retaliation due to my participation as a witness in an ongoing OSHA investigation. Based on the foregoing, I was a victim of discrimination and I charge the above named respondent with a[sic] discriminatory practices relating to employment by denying me equal terms, conditions and privileges of employment because of my participation as a witness, and creating and fostering a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, the Whistleblower Protection Act of 1989, and the New York State Human Rights Law, Section 296, as well as the state and federal constitutions.

(Kelly Affm. Supp. Mot. Dismiss, Ex. C.) There can be no dispute that plaintiff satisfied the exhaustion requirement with respect to the retaliation claim alleging cooperation with the OSHA investigation as the protected activity. Defendants' argument is limited to plaintiff's retaliation claim based upon the internal complaints concerning discrimination and worker safety. We conclude, however, that plaintiff's claim based upon the internal complaints is reasonably related to the Charge presented to the EEOC. During the OSHA investigation, plaintiff notified the investigators that he had advised defendants of the dangerous working conditions. (2d Am.Complt. ¶ 47.) We find it likely that the EEOC, in evaluating the charge of retaliation for co-operating with OSHA, considered the underlying subject matter of plaintiff's cooperation as well as any other causes or motives for the retaliatory discharge. *See Brown*, 163 F.3d at 712 ("We find [plaintiff's] disparate impact claim reasonably related to her failure to promote claim as we would expect that the EEOC, in investigating the complaint, would have assessed [defendant's] promotion policies and their effect on minority employees."). Accordingly, we conclude that plaintiff satisfactorily exhausted his Title VII retaliation claim.

### 2. *Protected Activity*

■ To prevail on a motion to dismiss, a plaintiff must allege that he engaged in a "protected activity." Protected activity includes participation in any investigation, proceeding or hearing under Title VII as well as any opposition to any practice made unlawful by Title VII. See 42 U.S.C. § 2000e–3(a); *Robinson v. Time Warner Inc.*, 92 F.Supp.2d 318, 332 (S.D.N.Y.2000). A "protected activity" under Title VII does not have to "rise to the level of a formal complaint." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000). It includes activities of "making complaints to management," *id.* (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)), and may be in the form of a simple "objection voiced to the employer." *Barcher v. New York Univ. Sch. of Law*, 993 F.Supp. 177, 184 (S.D.N.Y. 1998) (quoting *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 410 (S.D.N.Y.1996)); *see also Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir.1992) ("[I]nternal complaint to company management ... is protected activity within the policies of Title VII."); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F.Supp.2d 256, 275–76 (S.D.N.Y.2001) (holding internal complaint to employee

relations department to be protected activity under Title VII).

Plaintiff alleges that he was retaliated against for cooperating with an OSHA investigation and for the filing of internal complaints relating to discriminatory conduct and worker safety. Defendants correctly argue that the OSHA investigation was not brought pursuant to Title VII and that unsafe working conditions are not made unlawful under Title VII. As a result, plaintiff's Title VII retaliation claim that is premised upon retaliation in response to cooperation with an OSHA investigation is dismissed. However, plaintiff also claims that he was retaliated against in response to the lodging of several internal complaints regarding defendants' discriminatory conduct. Unlawful discrimination based on race and national origin is clearly proscribed by Title VII. Accordingly, plaintiff successfully alleges that he was engaged in a protected activity under Title VII.

### 3. *Causation*

A causal connection between plaintiff's internal complaints and his termination may be established either *"indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against plaintiff by the defendant." *DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111, 115 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987) (citations omitted) (emphasis in original). In *Johnson v. Palma,* 931 F.2d 203, 208 (2d Cir.1991), the Second Circuit reversed the trial court's dismissal of the complaint, holding that "[u]nder well-established principles, a showing that the adverse action directly followed [the protected activity] . . . is sufficient to establish the requisite causal connection."

In the instant action, plaintiff alleges that he made repeated complaints to defendants regarding the discriminatory treatment he experienced at Beechmont. He further alleges that defendants "terminated plaintiff on the basis of his race, in retaliation for making internal complaints regarding the disparate and discriminatory manner in which plaintiff was treated by his supervisors and co-workers . . . ." (2d Am.Complt.¶ 61.) We conclude that these allegations sufficiently allege a causal connection between the protected activity and plaintiff's termination. Accordingly, defendants' motion to dismiss plaintiff's retaliation claim premised upon the internal complaints of discrimination is denied.

### IV. *Federal Constitutional Claims*

In the Second Amended Complaint, plaintiff alleges that defendants violated the First [2], Fifth and Fourteenth [3] Amend-

---

**2.** The Sixth Cause of Action states, in pertinent part, that "[d]efendants violated [p]laintiff's First Amendment rights as well as his rights under the New York State Constitution." (2d Am.Complt.¶ 101.)

**3.** The Fifth Cause of Action states, in pertinent part, that

[t]he aforementioned conduct of the [d]efendants in discriminating against the [p]laintiff because of his status as a Hispanic and Puerto Rican origin (sic) was in violation of § 296 of the Executive Law and

deprived Plaintiff of his rights without due process of law in violation of Article 6 of the Constitution of the State of New York and the fifth and fourteenth amendments of the U.S. Constitution.
(2d Am.Complt.¶ 94.)

The Fourth Cause of Action states, in pertinent part, that

[t]he [d]efendant, BEECHMONT, intentionally and willfully discriminated against the [p]laintiff in his employment on the account of race, color and national origin by creat-

ments of the United States Constitution. Defendants move to dismiss for failure to allege that defendants were state actors.

### A. Fourteenth Amendment Claims

■ The Supreme Court recently stated that:

the language and purpose of the Fourteenth Amendment place certain limitations on the manner in which Congress may attack discriminatory conduct. These limitations are necessary to prevent the Fourteenth Amendment from obliterating the Framers' carefully crafted balance of power between the States and the National Government. Foremost among these limitations is the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action. '[T]he principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.'

*Morrison,* 529 U.S. at 620–21, 120 S.Ct. 1740 (quoting *Shelley v. Kraemer,* 334 U.S. 1, 13, n. 12, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)) (citations omitted). Because plaintiff makes no allegation that his rights were violated as the result of any state action, defendants' motion to dismiss plaintiff's Fourteenth Amendment claim is granted.

### B. First Amendment Claims

■ "It is elementary constitutional doctrine that the first amendment only restrains [government] action." *Buckley v. American Fed'n of Television & Radio Artists,* 496 F.2d 305, 309 (2d Cir.1974) (citing *Railway Employees' Dep't v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956)). However, "when private action becomes imbued with a governmental character, or when the Government significantly insinuates itself into the operative activities of private parties, then action by private parties may be regarded as 'state action' and, if so, will be subject to all the constitutional limitations on government action." *Id.* In *Jensen v. Farrell Lines, Inc.,* 625 F.2d 379, 384 (2d Cir.1980), the Second Circuit identified two general approaches to determine whether seemingly private action can be considered that of the state: (1) where "the conduct of the private actor is equivalent to the performing of a state function"; and (2) where the "state and the private actor have a symbiotic relationship, making them so significantly involved with one another as to render the private actor subject to the constitutional responsibilities of the state."

Plaintiff does not suggest that defendants are government actors. Furthermore, he makes no allegation that defendants' purely private actions are properly considered those of the state. Accordingly, defendants' motion to dismiss plaintiff's First Amendment claim is granted.

### C. Fifth Amendment Claims

■ Similarly, "[m]ost of the provision of the Fifth Amendment ... are incapable of violation by anyone except government in the narrowest sense." *United States v. Solomon,* 509 F.2d 863, 867 (2d Cir.1975); *see also Datek Sec. Corp. v. National Ass'n of Sec. Dealers, Inc.,* 875 F.Supp. 230, 234 (S.D.N.Y.1995) (holding that

---

ing a hostile work environment in violation of the New York State Constitution, the Constitution of the United States, and applicable statutes.

(2d Am.Complt.¶ 88.)

"[p]laintiff's claim to have raised a substantial constitutional question . . . fails because [defendant] is not a governmental actor subject to the Fifth Amendment."). For the reasons previously discussed, *see supra* Parts IV.A.-B., defendants' motion to dismiss plaintiff's Fifth Amendment claim is granted.

### V. *State Constitutional Claims*

In the Second Amended Complaint, plaintiff seemingly alleges a due process violation under N.Y. Const. art. I, § 6.[4] Defendants argue that these claims should be dismissed because plaintiff fails to allege that defendants are state actors.

■ New York's due process clause states that "[n]o person shall be deprived of life, liberty or property without due process of law." N.Y. Const. art. I, § 6. Unlike the due process clause of the Fourteenth Amendment, there is no express state action requirement. However, as the New York Court of Appeals explained,

> [t]hat is not to say, of course, that the due process clause of the State Constitution eliminates the necessity of any State involvement in the objected to activity. Rather, the absence of any express State action language simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect to the Federal provision.

*Sharrock v. Dell Buick–Cadillac, Inc.,* 45 N.Y.2d 152, 408 N.Y.S.2d 39, 44, 379 N.E.2d 1169 (1978) (citations omitted); *see also Montalvo v. Consolidated Edison Co. of New York,* 92 A.D.2d 389, 460 N.Y.S.2d 784 (1st. Dep't 1983) (denying plaintiff's

due process claim because defendant Con Edison's denial of [plaintiff's] application for service did not constitute state action); *Smallwood v. Warren,* 50 A.D.2d 598, 375 N.Y.S.2d 154 (N.Y.App.Div.1975) ("There can be no violation of due process unless the requisite 'state action' is present.").

■ In the instant action, plaintiff does not allege that defendants were state actors or that there was any significant state involvement in defendants' conduct. Therefore, defendants' motion to dismiss plaintiff's claims alleging violations of the New York State Constitution is granted.

### VI. *Costs and Attorneys Fees*

Defendants argue that the Second Amended Complaint includes frivolous causes of action which clearly have no basis in law and which violate Fed. R. Civ. P. § 11(b)(2). While defendants "are not requesting the Court apply Rule 11 sanctions, defendants do request that the costs involved in the making of this motion be borne by . . . plaintiff," presumably pursuant to Rule 11. (Defs. Mem. Supp. Mot. Dismiss at 18.)

■ Assuming arguendo that defendants are substantively entitled to sanctions, defendants fail to bring a proper motion under Rule 11. Fed. R. Civ. P. § 11(c) states, in pertinent part:

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines [that sanctions are appropriate], the court may . . . impose an appropriate sanction. . . .

(1) **How Initiated**

(A) **By Motion.** A motion for sanctions under this rule shall be

---

4. *See supra* footnotes 2–3. The Second Amended Complaint specifically cites only to Article 6 of the N.Y. Const. However, Article 6 has no relevance to the instant action in that it refers to the establishment and organi-

zation of the Judiciary. As defendants suggest, plaintiff more likely meant to refer to Article 1, Section 6. We will afford plaintiff considerable latitude and analyze his claim as if accurately pled.

 

made separately from other motions or requests.... It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected....

(B) **On Court's Initiative.** On its own initiative, the court may enter an order describing the specific conduct that appears to violate [the Rule] and directing an attorney, law firm, or party to show cause why it has not violated [the Rule].

Defendants did not bring a proper Rule 11 motion and we therefore deny defendants' motion for costs and attorneys' fees. Furthermore, we do not find that sanctions are appropriate in the instant action and decline to enter an order directing plaintiff to demonstrate his compliance with Rule 11.

## CONCLUSION

For the reasons set forth above, we grant defendants' motion to dismiss the Second Amended Complaint with prejudice as to plaintiff's claims for: (1) national origin discrimination under 42 U.S.C. § 1981; (2) disparate impact under Title VII; (3) Title VII retaliation based upon plaintiff's cooperation with the OSHA investigation; (4) violations of the First, Fifth and Fourteenth Amendments of the United States Constitution; and (5) violation of the due process clause of the New York State Constitution. However, defendants' motion to dismiss is denied with respect to plaintiff's additional Title VII claims, including retaliation for the filing of internal complaints alleging discriminatory treatment. Defendants' motion for costs

and attorneys fees under FED. R. CIV. P. § 11(b) is denied.

SO ORDERED.